**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

KEVIN LEROY RICE,

Defendant-Appellee.

No. 06-5138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 06-CR-63-TCK)**

---

Claire J. Evans, Appellant Section, Criminal Division, United States Department of Justice, Washington, D.C. (David E. O'Meilia, United States Attorney, and D. Edward Snow, Assistant United States Attorney, Northern District of Oklahoma, Oklahoma City, with her on the briefs) for Plaintiff-Appellant.

Robert A. Ridenour, Assistant Federal Public Defender (John V. Butcher, Federal Public Defender, with him on the brief) Office of the Federal Public Defender, Northern & Eastern Districts of Oklahoma, Tulsa Oklahoma, for Defendant-Appellee.

---

Before **BRISCOE**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

Police officers in Tulsa, Oklahoma recovered a gun belonging to Kevin Leroy Rice during an early morning traffic stop. The officers had stopped a car carrying Rice and two others in a high crime neighborhood after observing the car's suspicious driving pattern and a tag light violation. Suspicions were further aroused when during routine identification checks the rear seat passenger gave conflicting information about her identity. The officers also learned that Rice was known to be armed and dangerous and had an extensive criminal history—including burglary, robbery, and shooting with intent to kill. The officers decided to remove Rice from the car and conduct a pat-down search. Rice had a handgun in his pocket.

Rice successfully argued in the district court that the police lacked reasonable suspicion to conduct the pat-down search. Finding the totality of circumstances supported the officer's reasonable belief that Rice might be carrying a weapon, we REVERSE the district court's ruling on the motion to suppress evidence of the gun.

## I. Background

Corporal Dan Miller and Officer James Weakley of the Tulsa, Oklahoma Police Department testified at the suppression hearing about the circumstances surrounding the incident. The background facts are largely undisputed.

*The Traffic Stop.* At around 2:30 a.m. on Tuesday, March 14, 2006, Corporal Miller was patrolling a residential area of Tulsa near the intersection of

East 52nd and North Peoria Street.  Officers considered this a high crime area, and Miller had previously responded to shootings, murders, and burglaries nearby.

Corporal Miller spotted a black car proceeding eastward on East 52nd.  Because it was the only car out at that time of the night, Miller followed it as it turned south on Rockford and then continued to proceed east on 51st Place.  Miller watched the car's progress as the brake lights came on and the vehicle slowed and then accelerated again past four or five houses before braking and slowing again.  The car repeated this procedure about eight times over two residential blocks, stopping only at stop signs.

Based on the time of night and the unusual driving pattern, Miller suspected the occupants might be preparing for a burglary or drive-by shooting, relatively common occurrences in the neighborhood.  Miller also testified that the car did not have a tag light illuminating its rear license plate, a violation of Oklahoma traffic laws.

Miller radioed two other officers on patrol that night, including Officer Weakley, and informed them of the car's unusual driving and the tag light violation.  Weakley rendezvoused with the vehicle and initiated a stop with Miller and another officer as backup.

*The Encounter With Rice.*  As Weakley approached the car, he saw two men in the driver and passenger seats and a woman in the back seat.  He informed the

driver of the tag light violation and asked for a driver's license and proof of insurance. He also asked the passengers for identification. The front seat passenger provided an Oklahoma identification card identifying him as Rice. The back seat passenger said she had no identification, so Weakley asked for her name. She first said her name was Aiesha Watkins, but when Weakley took out his pen and pad and asked for her name again, she said her name was Aiesha Watson. Weakley testified that, in his experience, if someone says they do not have identification on them, they are often trying to conceal their identity and may give inconsistent names.

Weakley then took the driver's license, Rice's identification card, and the backseat passenger's name back to his patrol car. He ran a records check on all three individuals while writing a citation for the tag light violation. The driver's record had a few insignificant entries, but the names "Aiesha Watkins" and "Aiesha Watson" had no records associated with them. Weakley considered this information unusual because "[u]sually somebody has a record of some sort, whether it's offensive—being a victim of a crime, having some sort of traffic citation, something will come back." R. at 37.

The background check on Rice revealed more serious information. Weakley testified, "First thing I noticed on his record, it appeared on the computer screen that he has been known to be armed and dangerous." R. at 37.

Rice also had an extensive criminal record. His sixteen prior felony convictions included robbery, burglary, and shooting with intent to kill.

*The Pat-Down Search.* Because of the results of the records check, Weakley decided to remove the occupants from the car for his safety. He first asked Rice to step out of the car because he thought Rice was the most significant safety threat. As he got out of the car and before Weakley requested a search, Rice turned towards Weakley and placed his hands on top of the car, assuming the position for a weapons search. Weakley performed a pat-down search and recovered a gun. About five minutes elapsed between the time Weakley stopped the car and his search of Rice.

*The District Court's Ruling.* The district court granted Rice's motion to suppress evidence of the gun after determining the circumstances did not support a reasonable suspicion sufficient to search Rice. According to the court, "the problem of this case is, that there has to be an objectively reasonable suspicion of illegal activity. And running that records check on the defendant in this case is not enough." R. at 52. The court discounted the back seat passenger's false identity and other surrounding circumstances as irrelevant to the officer's suspicions about Rice.

## II. Analysis

When reviewing a district court's decision on a motion to suppress, we "accept the district court's factual findings unless they are clearly erroneous. The

ultimate determination of reasonableness is a question of law reviewable de novo." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006) (internal citations omitted). A determination of reasonable suspicion is based on "an objective standard taking the totality of the circumstances and information available to the officers into account." *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004) (quoting *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996)).

*A. Legal Framework.*

This case raises questions implicating two distinct lines of cases that merge in this appeal—traffic stops and pat-down weapons searches. The Fourth Amendment governs both situations and in either instance prohibits an unreasonable search or seizure. *See*, *e.g.*, *Alcaraz-Arellano*, 441 F.3d at 1257 (traffic stop); *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006) (pat-down search).

Since a traffic stop itself is a seizure, the Fourth Amendment requires the stop to be justified at its inception and reasonably limited in scope. *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001). A justifiable stop must not exceed the reasonable duration required to complete the purpose of the stop. *See United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007).

A pat-down search must be justified by a reasonable suspicion that a person is armed and dangerous. *Garcia*, 459 F.3d at 1064. During investigative stops, including a traffic stop, an officer may perform a pat-down search

> where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also United States v. Palmer*, 360 F.3d 1243, 1246 (10th Cir. 2004). We view "the officer's conduct through a filter of common sense and ordinary human experience." *Garcia*, 459 F.3d at 1064.

Officer safety is the primary objective justifying an officer's right to perform a pat-down search. And during traffic stops, we have consistently recognized that the risk to officer safety is heightened by the confrontational nature of the encounter:

> An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation. The motorist must suspend his or her plans and anticipates receiving a fine and perhaps even a jail term. That expectation becomes even more real when the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop.

*Holt*, 264 F.3d at 1223. We further recognized that "[r]esort to a loaded weapon is an increasingly plausible option for many such motorists to escape those consequences, and the officer, when stopping a car on a routine traffic stop, never

knows in advance which motorists have that option by virtue of possession of a loaded weapon in the car." *Id.* An officer may therefore take reasonable "steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry*, 392 U.S. at 23.

The reasonable suspicion required to justify a pat-down search represents a "minimum level of objective justification," *Alcaraz-Arellano*, 441 F.3d at 1260 (quoting *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir.1997)), and "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Reasonable suspicion is based on the totality of circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense. *Id.* at 273; *see also Garcia*, 459 F.3d at 1064.

*B. Application.*

The government contends (1) Officer Weakley did not exceed the permissible scope of the stop when he searched Rice, and (2) the search was supported by reasonable suspicion that Rice was armed and dangerous. The district court recognized that Officer Weakley did not significantly delay the stop, but the court decided in suppressing evidence of the gun, "[t]his is erratic driving

in a high crime area, I think the officers are justified in being suspicious, but I don't think you can go from that justification to the stop and pat-down." R. at 53.

Rice concedes on appeal the traffic stop was justified at its inception because of the tag light violation. The remaining issues then are whether the officers exceeded the reasonable scope of the stop or lacked reasonable suspicion in conducting the pat-down search.

*The Scope of the Stop.* An officer may not extend a traffic stop beyond a reasonable duration necessary to accomplish the purpose of the stop unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot. *Alcaraz-Arellano*, 441 F.3d at 1259. While a traffic stop is ongoing, however, an officer has wide discretion to take reasonable precautions to protect his safety. *Holt*, 264 F.3d at 1221–23. Obvious precautions include running a background check on the driver and removing the occupants from the vehicle. *Id.* at 1221–22 (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997) and *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). Furthermore, because passengers present a risk to officer safety equal to the risk presented by the driver, *Maryland v. Wilson*, 519 U.S. 408, 413–14 (1997), an officer may ask for identification from passengers and run background checks on them as well. *United States v. Jenson*, 462 F.3d 399, 403–04 (5th Cir. 2006); *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001); *see also United*

*States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989) (noting that officer can legitimately ask questions about the identity of passengers during a traffic stop).

None of Officer Weakley's actions prior to searching Rice unreasonably extended the duration of the stop, which had been in progress for only a few minutes when he removed Rice from the car. Weakley testified that he had not finished writing the citation when he received the results of Rice's background check, at which point Weakley immediately decided to return to the car to remove the occupants. Because his actions did not unreasonably extend the traffic stop, Weakley did not need reasonable suspicion to request identification from Rice, run a background check on him, or remove Rice or any other passenger from the car. These actions are fully justified by officer safety concerns no matter how innocuous the traffic violation and need not be supported by additional reasonable suspicion. *See Wilson*, 519 U.S. at 415; *Alcaraz-Arellano*, 441 F.3d at 1259; *Holt*, 264 F.3d at 1221–22.

*Reasonable Suspicion for the Pat-Down Search.* A pat-down search, however, requires additional suspicion that the suspect may be armed and dangerous. Although Officer Weakley could remove Rice from the car as a part of a routine traffic stop, he could not perform a pat-down search for weapons unless he reasonably suspected that Rice might be carrying one. *See United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir. 2005). We conclude that reasonable suspicion was present here.

-10-

The record discloses a number of facts justifying the pat-down search:

(1) Rice was one of three people in a car driving around a high crime area of Tulsa at 2:30 on a Tuesday morning, a time when there were no other cars or people around;

(2) the car proceeded along two residential blocks, slowing intermittently in a manner that an observing officer thought consistent with preparing for a burglary or drive-by shooting;

(3) the car did not have a tag light, which in the observing officers' experience could indicate a desire to avoid identification;

(4) the passenger in the backseat had given Weakley what he, based on his experience, believed were false names intended to conceal her true identity;

(5) the computer check Weakley ran confirmed his suspicions about the back seat passenger when his search revealed no information on the names she gave;

(6) the computer check identified Rice as "known to be armed and dangerous";

(7) Rice had a lengthy and violent criminal record; and

(8) Rice immediately assumed the position for a weapons search upon exiting the car.

Taken together, these facts support Weakley's belief that a pat-down search was justified for his own safety.

In reaching a contrary conclusion, the district court's decision discounted the totality of the information known to the officers by focusing on the facts in isolation. For example, the court emphasized two aspects of the stop—Rice's criminal history and the car's "erratic driving in a high crime area"—in concluding that Officer Weakley acted without reasonable suspicion. The court found that suspicious movements in a high crime area by a person with a criminal history do not amount to reasonable suspicion sufficient to justify an investigative detention, relying on *United States v. Davis*, 94 F.3d 1465 (10th Cir. 1996).

In *Davis*, we concluded that officers had no "specific factual basis" to suspect a crime when they stopped and detained a man on foot with a criminal history in a high crime area near a "known criminal establishment." *Id.* at 1467–68, 1470. Here, in contrast, Rice concedes the initial stop of the vehicle was valid. The officers in *Davis* had not yet initiated a valid stop, and so the officer safety concerns justifying a pat-down search for weapons were attenuated. And while Rice correctly notes that a criminal record, standing alone, is not sufficient to create reasonable suspicion of anything, *id.* at 1468, it may be one factor of several that contributes to a finding of reasonable suspicion. *Palmer*, 360 F.3d at 1246; *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994). Given the officer safety rationale underlying the justification for a pat-down search, a string of serious felonies like Rice's carries additional weight. Taken together, the information presented to Weakley was cause to believe Rice was

-12-

presently armed and dangerous. The officer was entitled for safety reasons to perform a pat-down search.

The district court also discounted the fact that the false identity provided by the back seat passenger contributed to reasonable suspicion vis-a-vis Rice. Given the circumstances here, the passenger's attempt to hide her identity is entirely consistent with efforts to avoid detection of criminal conduct. Thus, Officer Weakley's inference that the passenger's desire to conceal her identity was somehow related to the activities of the car's three occupants was justified, and our case law supports such an inference. *See Dennison*, 410 F.3d at 1213 (recognizing as reasonable an officer's inference that a driver could be hiding weapons in his car when his passenger had an outstanding warrant for a weapons violation). A reasonable officer can infer from the behavior of one of a car's passengers a concern that reflects on the actions and motivations of the other passengers. The backseat passenger's behavior could only heighten Weakley's concern that this was anything but a routine traffic stop.

Weakley could thus reasonably infer at least two things from the back seat passenger's evasiveness—(1) that her eagerness to hide her identity made any innocent explanations for the party's early-morning activities less likely, and (2) the evasive behavior made more likely the officer's suspicions that their conduct comported with preparations for a crime. Given that the officers suspected attempts at burglary or a drive-by shooting, based on the history of the residential

-13-

area in question, the driving pattern of the car, and the obscured license plate, a greater likelihood of illegal activity also meant a greater likelihood that at least one person in the car was armed.

Ultimately, the question before us is whether all of the facts available to Officer Weakley at the moment of the search would "warrant a man of reasonable caution in the belief that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (internal quotations omitted). Here they do. In this case, a reasonably prudent officer would have done exactly what Officer Weakley did—conduct a routine pat-down search for weapons to protect his safety and that of others during the traffic stop.

### III. Conclusion

Accordingly, the district court's order granting the motion to suppress is REVERSED and the case is REMANDED for proceedings consistent with this opinion.