FILED
United States Court of Appeals
Tenth Circuit

October 29, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

VICENTE MONTES,

      Defendant - Appellant.

No. 09-2269
(D. C. No. CR-07-2236)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, and **HOLLOWAY**, Circuit Judge, and **MELGREN**, District Judge.[**]

---

Defendant-appellant, Vicente Montes, appeals his conviction and sentence from the United States District Court for the District of New Mexico. The district court had jurisdiction of the matter pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Eric F. Melgren, United States District Judge for the District of Kansas, sitting by designation.

# I. BACKGROUND

On July 30, 2007, at about 12:50 a.m., Vicente Montes was driving in Albuquerque with his girlfriend, Lorissa Quintana. Sheriff's Deputies Elder Guevara and Larry Harlan were sitting in their respective patrol cars talking to each other through open windows when they observed Montes' vehicle turn left on a red light. Deputy Guevara followed Montes' vehicle and signaled for Montes to pull over. Deputy Harlan followed Deputy Guevara's vehicle and pulled over on the opposite side of the road from Deputy Guevara.

After Montes pulled over, Deputy Guevara walked over to the passenger side of Montes' vehicle. Deputy Harlan stood by the driver's side of Montes' vehicle. Deputy Guevara asked Montes for his license, registration, and proof of insurance. Montes told Deputy Guevara that he did not have his registration or proof of insurance. Montes did have his license, which he handed to Deputy Guevara. Montes' hand shook "quite a bit" when he handed Deputy Guevara his license. Supp. R. Vol. 2 at 13. Deputy Guevara asked Montes a few questions about where he was traveling from and where he was going. Montes stuttered and looked at the ground when he responded. Deputy Harlan noticed that Montes was sweating from the side of his head and from his forehead.

Deputy Guevara and Deputy Harlan then returned to Deputy Guevara's vehicle. Deputy Guevara entered Montes' license plate number into his computer, which verified that Montes owned the vehicle he was driving. Deputy Guevara also verified that Montes' driver's license was valid and that there were no warrants outstanding for his

arrest. While Deputies Guevara and Harlan were verifying Montes' information, Deputy Harlan saw Montes looking at the deputies through his mirror and then leaning forward. Both deputies observed Montes' left shoulder "dip" forward, as though he were hiding or retrieving something under his seat. The dip was "very pronounced" and the "whole front of his body… moved towards the steering wheel." *Id.* at 16.

After observing Montes' shoulder dip, Deputy Guevara testified that he then became concerned for his and Deputy Harlan's safety. Deputy Guevara told Deputy Harlan he was going to "pull" Montes out of the vehicle. *Id.* at 76. Deputy Guevara returned to Montes' car and asked, "[h]ey, what are you hiding?" *Id.* at 17. Deputy Guevara asked Montes twice whether he could search Montes' vehicle. Deputy Guevara then asked Montes to step out of his vehicle. The parties dispute whether or not Montes consented to a search of his vehicle. After Deputy Guevara asked Montes to step out of his vehicle, Montes complied, and left the driver's side door of his car open when he got out of his car. Deputy Guevara then indicated to Deputy Harlan that they had consent to search Montes' vehicle. Montes and Deputy Guevara walked to the rear of Montes' vehicle where Deputy Guevara did a pat-down of Montes and did not find any weapons. Deputy Guevara then asked Montes to sit on the hood of his patrol car.

Meanwhile, Deputy Harlan walked around the front of Montes' car and saw that the driver's side door was open. He shined his flashlight inside the open door towards the front seat and testified that "looking at the driver's seat, I could see what appeared to be the grip of a handgun sticking out from underneath the seat." *Id.* at 69. Deputy Harlan

- 3 -

then gave Deputy Guevara a visual cue that Deputy Guevara needed to secure Montes. Deputy Harlan told Deputy Guevara "10-80," meaning that he had found a weapon or gun in the vehicle. *Id.* at 21, 70.

Deputy Guevara placed Montes in handcuffs and read him his *Miranda* rights. Deputy Guevara then asked Montes, "[a]re you a convicted felon?" *Id.* at 23. Montes responded that he was a convicted felon and had served ten years in prison. Montes acknowledged that the gun belonged to him. Deputy Guevara then placed Montes under arrest. Deputy Harlan then retrieved the gun from the car. Both deputies testified that the length of time between when Montes' vehicle was pulled over and when he was arrested was less than five minutes.

A federal grand jury indicted Montes on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Montes filed a motion to suppress the evidence obtained after his initial stop for the traffic violation. The district court denied Montes' motion. Montes pled guilty to the indictment pursuant to a plea agreement, but reserved his right to appeal the district court's order denying his motion to suppress. Montes was then sentenced to 188 months in prison followed by three years of supervised release. The district court entered its judgment on October 15, 2009.

## II. ANALYSIS

On this appeal, Montes argues that the district court erred in holding that his prolonged detention was justified based solely on his nervousness and shoulder "dip." Montes further argues that the district court erred in applying the plain view exception to the handgun seized because the district court did not make an explicit finding that Montes' consent to search his car was validly given. We will address each of these arguments in turn.

**A.  The District Court Did not Err in Concluding that the Prolonged Detention and Questioning of Montes were Justified by Reasonable Officer Safety Concerns**

The Fourth Amendment prohibition against unreasonable searches and seizures applies to traffic stops. A traffic stop constitutes a seizure and must be both justified at its inception and reasonably limited in scope. *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) (citing *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001)). A justifiable stop must not exceed the reasonable duration required to complete the purpose of the stop. *Id.* (citing *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007)). An officer must allow the driver to continue on his way without further questioning so long as the driver has provided a valid license and proof of his right to operate the vehicle. *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003) (citation omitted). Law enforcement officers may not extend a traffic stop beyond the reasonable time necessary to accomplish the purpose of the stop unless the officers have reasonable suspicion of other criminal activity, or the driver consents. *Rice,* 483 F.3d at 1083-84 (citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006)). The

required reasonable suspicion "is based upon the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Id.* at 1083 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Inchoate suspicions and unparticularized hunches do not provide reasonable suspicion. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989), *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). When reviewing a district court's decision on a motion to suppress, we "accept the district court's factual findings unless they are clearly erroneous." *Rice*, 483 F.3d at 1082 (quoting *Alcaraz-Arellano*, 441 F.3d at 1258). We review de novo the reasonableness of a search or seizure under the Fourth Amendment. *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citing *United States v. Lyons*, 510 F.3d 1225, 1234 (10th Cir. 2007)).

As the district court held, the initial stop of Montes' vehicle was justified at its inception because Deputy Guevara stopped Montes for turning left on a red light. Order Den. Def.'s Mot. to Suppress 2-3, March 16, 2009, ECF. No. 64 ("Order"). The district court further held that Montes' prolonged detention was justified by Deputy Guevara's reasonable concern for officer safety based on the totality of the circumstances. *Id.* at 4. Montes does not challenge the constitutionality of the initial traffic stop, the nature or extent of the prolonged detention, or the underlying factual findings by the district court. Rather, Montes argues that the two grounds giving rise to the officers' safety concerns, nervousness and a "shoulder dip," without more, are insufficient to provide a reasonably articulable suspicion of criminal activity as a matter of law.

Montes argues that nervousness, on its own, is insufficient to provide a reasonable suspicion, and the addition of a "shoulder dip" similarly falls short of generating a reasonable suspicion under the totality of the circumstances in the instant case. Appellant's Br. 12 (citing *United States v. Hall*, 978 F.2d 616, 622 (10th Cir. 1992)). Montes argues that leaning or reaching motions by the driver of a vehicle in a traffic stop should be interpreted with caution because "such movements may be consistent with 'a perfectly lawful action that is to be expected when one is pulled over by the police,' such as reaching for or replacing a wallet or identification." *Id.* (quoting *United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005)). Rather, in cases where courts have found leaning or reaching movements to support a reasonable suspicion, Montes argues that it is the other circumstances, such as "informants' tips, a high crime location, or the officers' personal knowledge of the defendant," that support an inference that the defendant is armed or a danger to officer safety. *Id.* at 13. Montes points out that those accompanying circumstances are lacking in the instant case because there is no evidence that his traffic stop took place in a high-crime area, Montes pulled over without delay when Deputy Guevara signaled for him to do so, Montes' car was properly registered under his name, there were no outstanding warrants for his arrest, and there were no other indications that he was or was known to be armed or dangerous.

Montes' argument, however, is unpersuasive for two reasons. First, the reasonableness of an officer's suspicions is analyzed under the totality of the circumstances rather than circumstance-by-circumstance. In this case, the traffic stop

occurred late at night. When Deputy Guevara first questioned Montes about his travel plans and requested his license and registration, both deputies noticed that Montes was uncommonly nervous. Montes' hands shook as he handed Deputy Guevara his license. He stuttered and avoided eye contact with Deputy Guevara when Deputy Guevara asked him routine traffic stop questions. Deputy Harlan noticed that Montes was sweating profusely. After Deputies Guevara and Harlan returned to Deputy Guevara's vehicle to verify Montes' information, Deputy Harlan observed Montes watching them through his rearview mirror just before he leaned forward. Furthermore, Montes' shoulder "dip" was described by both deputies as atypical for traffic stops. Deputy Guevara testified that, "[n]ormally when somebody is driving, it's normal for people to like reach within the car. But for [Montes'] left shoulder to actually dip, that's not common practice when I do traffic stops." Supp. R. Vol. 2 at 16. Deputy Harlan similarly testified that Montes' shoulder dip was "not a normal action that we observe on traffic stops." *Id.* at 76. Given the unusual nature of Montes' movements and the officers' inferences, based on their experience and training, that their safety could be in danger, we find that under the totality of the circumstances, the officers' safety concerns were reasonable.

Second, the deputies' return to Montes' vehicle following Montes' shoulder dip was reasonable. "While a traffic stop is ongoing . . . an officer has wide discretion to take reasonable precautions to protect his safety." *Rice*, 483 F.3d at 1084 (citing *Holt*, 264 F.3d at 1221-23). "Since police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably

- 8 -

necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*] stop.'" *United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir. 1996) (quoting *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993)). In determining whether police conduct during an investigatory stop is reasonable, a court "should take care to consider whether police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* at 1505 (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). In this case, Deputies Harlan and Guevara were acting in response to a perceived threat to their safety. They returned to Montes' vehicle in order to maintain the status quo and to protect their safety. As the district court found significant, "Deputy Guevara testified, 'I felt that [Montes] might be concealing either a handgun or something, so for my safety I reapproached the vehicle.'" Order 4. Under these circumstances, we decline to hold that the deputies' safety concerns were unreasonable or that their return to Montes' vehicle was unreasonable because of the lack of circumstances that Montes has cited.

Both deputies testified that the length of the detention between Montes' being pulled over until he was arrested was less than five minutes. Given the short duration of the stop and the circumstances as reviewed above, we hold that the prolonged detention of Montes was not unreasonable.

**B.** **The District Court Did not Err in Applying the Plain View Exception to the Seizure of the Handgun in Montes' Vehicle**

The plain view exception permits a law enforcement officer to seize evidence without a warrant if: "(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent—i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself." *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) (quoting *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999)).

The district court applied the plain view exception to Deputy Harlan's warrantless seizure of Montes' handgun. Deputy Harlan saw Montes' handgun in plain view under Montes' seat after Montes exited his vehicle, leaving the driver's side door of his car open. Montes argues that the only reason the deputies had for asking him to exit his vehicle was his purported consent to search the vehicle. Thus, Montes contends that the district court erred by applying the plain view exception to Deputy Harlan's seizure of his handgun without making an explicit finding that Montes' consent was validly given.[1] Without his valid consent, Montes argues that Deputy Harlan was not lawfully in a place from which to view the handgun, as required by the first prong of the plain view exception. In response, the government argues that the deputies did not need Montes' consent to ask him to exit his vehicle because they were authorized to do so out of a

---

[1] The government concedes Montes' second claim of error, that to the extent the district court found that Montes exited his vehicle and then gave his consent, those events happened in the opposite order. Appellee Br. 17 n.9. However, because we hold that the deputies did not need Montes' consent to ask him to step out of his vehicle, to the extent the district court erred in the ordering of Montes' consent and his exiting his vehicle, such error was harmless.

concern for their safety, regardless of Montes' consent. Appellee Br. 17. Montes objects to the government's officer safety argument as one forfeited because it is raised for the first time on appeal. We disagree that the government's argument was forfeited. Although the argument was not artfully stated, we find that it was sufficiently raised below.

The district court's order denying Montes' motion to suppress tied much of its reasoning to the officers' safety concerns. Although the government did not raise the issue of officer safety in its response to Montes' motion to suppress (Response to Def.'s Mot. to Suppress 7-8 Oct. 23, 2008, ECF No. 39), the government did raise the issue in its supplemental brief following the evidentiary hearing on Montes' motion. United States' Supp. Resp. to Def.'s Mot. to Suppress 4 Jan. 27, 2009, ECF No. 57. When the district court issued its order denying Montes' motion to suppress, it found that officer safety concerns motivated the deputies' prolonged detention of Montes. This detention included the deputies' return to Montes' vehicle, asking Montes to step out of his vehicle, conducting a *Terry* pat-down of Montes, and then asking Montes to sit on the hood of Deputy Guevara's patrol car. Order 2, 4. Montes does not argue that the district court's factual findings on the officer safety concerns were erroneous, and our review of the deputies' testimony at the evidentiary hearing support the district court's findings. Therefore, we will consider the government's argument.

On the merits, we agree with the government that Deputy Guevara was authorized to ask Montes to exit his vehicle out of a concern for both his and Deputy Harlan's safety.

It is well-established that during a routine traffic stop, an officer has the discretion to "order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger." *Holt*, 264 F.3d at 1222 (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (*per curiam*)); *see also New York v. Class*, 475 U.S. 106, 115-116 (1986) (citing *Mimms*, 434 U.S. at 108-111). The district court found that Deputy Guevara asked Montes to step out of his vehicle out of a concern for his safety. Order 2. Similarly, Deputy Harlan testified that before he and Deputy Guevara reapproached Montes' vehicle, Deputy Guevara told him that he was going to pull Montes out from his vehicle. In view of the district court's findings of fact and the record on appeal, Deputy Guevara was thus authorized to ask Montes to step out of the car because of his safety concerns.

Because Deputy Guevara acted within his authority when he asked Montes to step out of his car, the district court did not commit reversible error in neglecting to explicitly find that Montes validly consented to the search of his vehicle. Montes left his door open when he was asked to exit his vehicle, leaving the grip of his handgun in plain view. Deputy Harlan was therefore lawfully in a place from which he could see the grip of the handgun under Montes' seat, and he did not violate the Fourth Amendment in arriving at that place. Thus, the district court did not err in applying the plain view exception to Deputy Harlan's seizure of the handgun.

## III.  CONCLUSION

Accordingly, we AFFIRM the district court's denial of Montes' motion to suppress evidence.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge
