EBEL, Circuit Judge,
dissenting
I agree with the majority’s conclusion that Officer Devos reasonably believed that Mr. Garcia was dangerous given his recent encounter with Mr. Garcia, but I respectfully dissent from the court’s holding that a Terry search is warranted here because no credible evidence exists to support Officer Devos’s belief that Mr. Garcia was armed at the time of the stop. Supreme Court precedent requires an officer conducting a pat down to have a reasonable suspicion that the suspect was “armed and dangerous.” That standard was not satisfied here, and the district court improperly denied Mr. Garcia’s motion to suppress. I would reverse.
*
In Terry v. Ohio, the Supreme Court held that if an officer has reasonable suspicion that a suspect is “armed and dangerous,” the officer may conduct “a reasonable search for weapons for the protection of the police officer” without violating the Fourth Amendment. 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The standard “armed and dangerous” is phased in the conjunctive, and thus requires both elements: that the suspect is armed, and is also dangerous. I am compelled to respect the Supreme Court’s plain language, our circuit’s binding precedent, and the policy underlying this conjunctive requirement, all of which points to the conclusion that a Terry search is not justified here.
I. Plain Language of the Terry Test
The word “and” in the test, “armed and dangerous ” is to be construed in its plain-meaning conjunctive sense unless context specifies otherwise. Crooks v. Harrelson, 282 U.S. 55, 58, 51 S.Ct. 49, 75 L.Ed. 156 (1930) (holding the word “and” in its “ordinary sense” is a conjunctive word, requiring “not one or the other, but both see also e.g., City of Rome v. U.S., 446 U.S. 156, 172, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980)) abrogated on other grounds by Shelby *1148 Cnty., Ala. v. Holder, — U.S.-, 133 S.Ct. 2612, 186 L.Ed.2d 651 (2013) (holding that by using “and” to describe “the elements of discriminatory purpose and effect in the conjunctive, Congress plainly intended that a voting practice not be precleared unless both discriminatory purpose and effect are absent” (emphasis in original)); Qwest Commc’ns Int’l, Inc. v. F.C.C., 398 F.3d 1222, 1236 (10th Cir.2005) (“The use of the conjunctive ‘and’ in the phrase ‘preserve and advance universal service,’ [and in the phrase] ‘preservation and advancement of universal service,’ clearly indicates that the Commission cannot satisfy the statutory mandate by simply doing one or the other.”); Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1332 (11th Cir.2005) (“[U]nless the context dictates otherwise, the word ‘and’ is presumed to be used in its ordinary sense, that is, conjunctively.”); OfficeMax, Inc. v. United States, 428 F.3d 583, 589 (6th Cir.2005) (“[T]he Supreme Court has said that ‘and’ presumptively should be read in its ‘ordinary’ conjunctive sense unless the ‘context’ in which the term is used or “other provisions of the statute” dictate a contrary interpretation.”).
II. Tenth Circuit Precedent
Tenth Circuit precedent compels the conclusion that the phrase “armed and dangerous” requires an officer to have a reasonable suspicion of both elements. In United States v. Rice, for example, this court held:
Reasonable Suspicion for the Pat-Down Search. A pat-down search, however, requires additional suspicion that the suspect may be armed and dangerous. Although Officer Weakley could remove Rice from the car as a part of a routine traffic stop, he could not perform a pat-down search for weapons unless he reasonably suspected that Rice might be carrying one.
483 F.3d 1079, 1084 (10th Cir.2007). More recently, in United States v. House, we again affirmed this conjunctive standard, holding that “before an officer effectuates a limited frisk for weapons ... the officer must have a reasonable belief that the suspect is both (1) armed, and (2) dangerous.” 463 Fed.Appx. 783, 788 (10th Cir.2012) (unpublished decision) (emphasis in original); see also United States v. Riney, 742 F.3d 785, 788 (7th Cir.2014) (citing Terry, 392 U.S. at 27, 88 S.Ct. 1868) (“If the officer has an articulable suspicion that the person stopped is both armed and dangerous, the officer may conduct a pat-down search to determine whether the person is carrying a weapon.”).
III. Policy behind the Armed and Dangerous Test
Finally, Terry’s requirement that the suspect be armed and dangerous makes sense as a practical matter. If an officer does not reasonably believe the suspect is armed, there would be no reason for the officer to engage in a Terry pat down because the officer would have no legitimate fear of a concealed weapon that could be used to harm. Terry itself only allowed “a reasonable search for weapons for the protection of the police officer,” 392 U.S. at 27, 88 S.Ct. 1868, and while an officer could face danger even were the suspect not armed, the “narrowly drawn authority” to search for weapons involved in a pat down would do little for the officer unless he had a reasonable belief that the suspect was presently armed. Id.
Admittedly, this court has concluded that officers may reasonably believe that a suspect is armed under a wide variety of circumstances, including when:
1) A suspect’s history suggests that the suspect is likely to be armed. United States v. Dennison, 410 F.3d 1203, 1208 (10th Cir.2005);
*1149 2) The nature of the ongoing crime observed suggests that the suspect is armed. United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir.2006) (holding that “a connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous”);
3) A bulge in the suspect’s clothing suggests the presence of a weapon. United States v. Chavez, 812 F.2d 1295, 1302 (10th Cir.1987);
4) The suspect is stopped in a high-crime area or at an unusual time of night, suggesting that the suspect may be there to commit a crime and may be carrying a weapon. Rice, 483 F.3d at 1082.
However, a review of the factors relied on by the district court here shows that none of these circumstances — nor any other facts that would give Officer Devos reasonable suspicion that Mr. Garcia was armed — were present here. This is not to suggest that any one of the above circumstances, standing alone, would always be sufficient, as in many situations it would not be. But having no persuasive evidence that the suspect is armed is certainly insufficient to establish the “armed” prong of the Terry search.
Here, the district court first relied upon the fact that Officer Devos knew that Mr. Garcia was a convicted felon who had participated in an armed robbery in 2003, nine years before Mr. Devos stopped him in this case. Of course, standing alone, Officer Devos’s knowledge that Garcia had carried out an armed robbery nine years before the incident does not support a reasonable suspicion that he was armed and dangerous at the time of the stop. Although a prior history of violent crime can contribute to the reasonable suspicion analysis, see Rice, 483 F.3d at 1085, the great extent of time between the stop in 2012 and Mr. Garcia’s participation in that robbery make this evidence exceedingly weak. Had Mr. Garcia been stopped for suspicion that he was currently in the midst of a robbery attempt, his prior conviction for using a weapon in a robbery might be sufficient to establish the armed prong, at least if the earlier robbery was not too remote in time or circumstance. However, Officer Devos here did not allege that Mr. Garcia appeared to be on his way to a robbery, so his generalized recollection of Mr. Garcia’s ancient and factually discrete history contributes almost nothing to the reasonable suspicion analysis here.
Further, although the government makes much of the confrontation between Officer Devos and Mr. Garcia two weeks before the stop, that interaction diminishes the probative value of Mr. Garcia’s nine-year-old robbery conviction. In the recent confrontation between Officer Devos and Mr. Garcia, Mr. Garcia had been at his house (where he may have able to pick up some kind of weapon if he had wanted) before confronting Officer Devos. Yet Mr. Garcia did not have or use a weapon during that confrontation. That Mr. Garcia did not use a weapon when he arguably had the chance to do so undermines the government’s use of Mr. Garcia’s history as support for Officer Devos’s reasonable suspicion.
Officer Devos also noted that during the stop, Mr. Garcia was fidgeting nervously with his hands, in a way that suggested he was nervous and trying to calm his nerves. “[W]e have emphasized — repeatedly—that nervousness is of limited significance in determining reasonable suspicion.” United States v. Ludwig, 641 F.3d 1243, 1249-50 (10th Cir.2011). Although Officer Devos contends that he thought that Mr. Garcia’s fidgeting indicated that Mr. Garcia might be trying to hide either drugs or a weapon, his uncertainty as to whether he suspected drugs or a weapon deflates that *1150 suspicion. Officer Devos had no independent present evidence that would lead him to believe that Mr. Garcia was not simply — and predictably — nervous. Further, attempting to hide something in the car would seem contrary to Mr. Garcia having something on his person when searched later. At bottom, Officer Devos’s testimony on this aspect of the stop is “based on nothing more substantial than inarticulate hunches, a result th[e] Court has consistently refused to sanction.” Terry, 392 U.S. at 22, 88 S.Ct. 1868.
The district court also concluded that Officer Devos had reasonable suspicion that Mr. Garcia was armed and dangerous in part because “Officer Devos made this traffic stop while he was alone, at night, on a road that does not have much traffic.” ROA at 95. Although this court recognizes that when police officers initiate stops very late at night or in high crime areas, it can and does contribute to reasonable suspicion that a suspect may be armed to carry out a crime, Rice, 483 F.3d at 1084, none of these circumstances existed here. A driver traveling around dinner time on a street, without much traffic, outside of high crime areas should be under no more suspicion of possessing a weapon than an average citizen. An officer stopping a car in a light-traffic area at 7:45 p.m., even if it has recently become dark, may not call on these dinner-time circumstances, and the district court was wrong to include these circumstances as additional evidence on top of the magistrate judge’s report.
The plain language of the Supreme Court’s decision in Terry, this court’s precedent, and the underlying policy all require an officer performing a pat down to have a reasonable suspicion that the suspect was not only dangerous, but also armed. The record is devoid of evidence that supported a reasonable suspicion that Mr. Garcia was armed. Mr. Garcia’s motion to suppress should be granted.
I respectfully dissent.