**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JORGE RAY CORONA,

     Plaintiff - Appellee,

v.

OFFICER BRENT AGUILAR, in his
official capacity,

     Defendant - Appellant,

and

CITY OF CLOVIS; CLOVIS POLICE
DEPARTMENT; OFFICER TRAVIS
LOOMIS, in his official capacity,

     Defendants.

No. 19-2147

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:17-CV-00805-JCH)**
_____

Submitted on the briefs:[*]

Mark D. Standridge and Cody R. Rogers, Jarmie & Rogers, P.C., Las Cruces, New Mexico,
for Defendant-Appellant.

Daniel R. Lindsey, Lindsey Law Firm, LLC, Clovis, New Mexico, for Plaintiff-Appellee.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

During a routine traffic stop in August 2014, Clovis Police Officer Brent Aguilar arrested Plaintiff Jorge Corona, a passenger in the back seat of the vehicle, after he did not produce identification in response to the officer's demand for ID. Defendant Aguilar charged Plaintiff with (1) resisting, evading, or obstructing an officer and (2) concealing his identity. The district attorney's office dismissed the concealing-identity charge, and a jury later acquitted Plaintiff of the charge against him for resisting, evading, or obstructing an officer.

Plaintiff subsequently sued the arresting officers, Defendant Aguilar and police officer Travis Loomis; the City of Clovis; and the Clovis Police Department for, among other things, alleged constitutional violations under 42 U.S.C. § 1983. As relevant here, Plaintiff alleges Defendant Aguilar violated his Fourth Amendment right to be free from unlawful arrest by arresting him without probable cause. Defendant Aguilar moved for partial summary judgment on Plaintiff's unlawful-arrest claim based on qualified immunity, but the district court denied his motion.

In this interlocutory appeal, Defendant Aguilar argues the district court erred in denying him qualified immunity because, in his view, a reasonable officer could have believed probable cause existed to arrest Plaintiff during the traffic stop. We disagree. The district court properly concluded that a reasonable jury could find Defendant

2

Aguilar arrested Plaintiff without probable cause. Additionally, clearly established law would have put a reasonable officer in Defendant Aguilar's position on notice that his conduct violated Plaintiff's Fourth Amendment right to be free from unlawful arrest. Defendant Aguilar is therefore not entitled to qualified immunity. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Early in the morning of August 3, 2014, Defendant Aguilar was on patrol in Clovis, New Mexico, when he pulled over a car for speeding through a red light. After Defendant Aguilar approached the vehicle, he instructed the driver to roll down the back-passenger window and shined his flashlight into the rear driver's-side window. Plaintiff, who was a passenger in the back seat, asked Defendant Aguilar why he stopped the vehicle. In response, Defendant Aguilar said he was not talking to Plaintiff. While continuing to shine his flashlight into the rear driver's-side window, Defendant Aguilar asked the driver for her license, registration, and insurance documents. A few moments later, the driver handed some paperwork to Defendant Aguilar, who took the papers and asked the driver if she had her license with her.

While the driver searched for her license, Plaintiff again asked Defendant Aguilar why he stopped the vehicle. At this point, Defendant Aguilar did not suspect Plaintiff of committing any crime. In response to Plaintiff's question, Defendant Aguilar said, "You're not driving, buddy. You got ID?" Plaintiff responded, "Nah. Why you stopping us?" Defendant Aguilar replied, "Let me have your ID." Again, Plaintiff asked Defendant Aguilar why he stopped them, and Defendant Aguilar once

again responded, "Let me have your ID." Plaintiff immediately asked again, "Why you stopping us?" Defendant Aguilar responded, "I'm going to ask you one more time, and then I'm going to place you under arrest," and asked Plaintiff for his ID. Plaintiff asked, "For what?" Defendant Aguilar then ordered Plaintiff to step out of the vehicle. During this approximately fifteen-second interaction, the driver continued to search for her license.

Plaintiff exited the vehicle and again asked Defendant Aguilar why he stopped them. Defendant Aguilar instructed Plaintiff to turn around, face the vehicle, and place his hands behind his back. As Defendant Aguilar was handcuffing Plaintiff, Plaintiff once more asked, "Why are you stopping us?" Plaintiff repeated his question and asked if Defendant Aguilar had a reason to pull them over, to which Defendant Aguilar replied, "Yes I do." Plaintiff asked, "For what?" And Defendant Aguilar told him not to worry about it.

Shortly thereafter, Officer Travis Loomis arrived on the scene. Defendant Aguilar told Officer Loomis that Plaintiff was under arrest for concealing his identity. In response, Plaintiff said, "Concealing ID, for what?" and repeatedly stated, "I didn't conceal ID." Plaintiff further remarked, "You didn't even ask me what my name was." While Defendant Aguilar led Plaintiff to the patrol car, Plaintiff repeatedly stated that he did not conceal his identity. Defendant Aguilar then told Plaintiff three times in a normal tone of voice, "Come on. Come on. Stop. Stop. Stop. Come on. I asked you for your ID." Defendant Aguilar then slammed Plaintiff to the ground and loudly

4

commanded, "Stop, stop." A few moments later, Defendant Aguilar informed Plaintiff, "Now you are under arrest for resisting and evading too."

Following the arrest, Defendant Aguilar filed a criminal complaint charging Plaintiff with: (1) resisting, evading, or obstructing an officer, in violation of N.M. Stat. Ann. § 30–22–1; and (2) concealing identity, in violation of N.M. Stat. Ann. § 30-22–3. A magistrate judge determined probable cause existed in the complaint. But the district attorney's office dismissed the concealing-identity charge, and a jury later acquitted Plaintiff of the charge of resisting, evading, or obstructing an officer.

Plaintiff subsequently filed a civil action in New Mexico state court, which was then removed to federal court, alleging various state and federal claims against Defendant Aguilar, Officer Loomis, the City of Clovis, and the Clovis Police Department. As relevant here, Plaintiff asserted a 42 U.S.C. § 1983 claim against Defendant Aguilar alleging a violation of his Fourth Amendment right to be free from unlawful arrest. Defendant Aguilar filed a motion for partial summary judgment and argued he was entitled to qualified immunity on Plaintiff's unlawful-arrest claim.

In a well-reasoned Memorandum Opinion and Order, the district court denied Defendant Aguilar's motion with respect to Plaintiff's unlawful-arrest claim. *Corona v. City of Clovis*, 406 F. Supp. 3d 1187 (D.N.M. 2019). The district court first determined that a reasonable jury could find Defendant Aguilar violated Plaintiff's Fourth Amendment right by arresting him without probable cause. The district court then concluded Defendant Aguilar was not entitled to qualified immunity because Plaintiff's right to be free from unlawful arrest under the circumstances here was

5

clearly established at the relevant time.  Defendant Aguilar timely appealed from the district court's ruling.

## II.

At issue on appeal is whether the district court erred in denying qualified immunity to Defendant Aguilar on Plaintiff's § 1983 unlawful-arrest claim.  Defendant Aguilar insists this denial was improper because, in his view, probable cause existed to arrest Plaintiff.  Additionally, Defendant Aguilar argues he is entitled to qualified immunity even if he violated the Fourth Amendment because the contours of the right at issue were not clearly established at the relevant time.  After setting forth the applicable standard of review, we address the merits of Defendant's arguments.

## A.

We review de novo a denial of a motion for summary judgment based on qualified immunity, with our review limited to purely legal issues.  *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).  Because the doctrine of qualified immunity protects public officials from both liability and the burdens of litigation, our review of summary judgment rulings in this context differs from that applicable to other summary judgment decisions.  *Id.*  Specifically, when a defendant raises the qualified-immunity defense at summary judgment, the plaintiff must establish (1) the defendant violated a statutory or constitutional right and (2) that right was clearly established at the time of the defendant's unlawful conduct.  *Id.*  If the plaintiff fails to satisfy either part of this two-part test, the defendant is entitled to qualified immunity.  *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019).  In determining whether the

plaintiff has shouldered this heavy burden, "we construe the facts in the light most favorable to the plaintiff as the non-movant." *Quinn*, 780 F.3d at 1004.

B.

Defendant Aguilar first contends he is entitled to qualified immunity because Plaintiff failed to show he was arrested without probable cause in violation of the Fourth Amendment. Specifically, Defendant Aguilar maintains probable cause existed to arrest Plaintiff for (1) resisting, evading, or obstructing an officer and (2) concealing identity when Plaintiff did not produce an ID after Defendant Aguilar demanded it.

A warrantless arrest violates the Fourth Amendment unless probable cause exists to believe a crime has been or is being committed. *Id.* at 1006. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). In New Mexico, it is a misdemeanor to "conceal[ ] one's true name or identity . . . with intent to obstruct the due execution of law or with intent to intimidate, hinder or interrupt any public officer . . . in a legal performance of his duty." N.M. Stat. Ann. § 30–22–3. "Section 30–22–3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 983 P.2d 421, 424 (N.M. Ct. App. 1999) (quoting *In re Suazo*, 877 P.2d 1088, 1096 (N.M. 1994)).

7

The Fourth Amendment, however, does not permit an officer to arrest someone for concealing identity without "reasonable suspicion of some predicate, underlying crime." *Keylon*, 535 F.3d at 1216. Accordingly, to determine whether Plaintiff's arrest comported with the dictates of the Fourth Amendment, we must first consider whether Defendant Aguilar possessed reasonable suspicion that Plaintiff had committed or was committing a crime such that the demand for his ID was lawful. *See id.* at 1216–17. If such reasonable suspicion existed, we must next determine whether there also was probable cause to arrest Plaintiff for concealing identity after he did not immediately provide identification in response to Defendant Aguilar's demands.

For reasonable suspicion to exist, an officer must have a "particularized and objective basis for suspecting" criminal conduct under the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Thus, reasonable suspicion may exist "even if it is more likely than not that the individual is not involved in any illegality." *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (quoting *United States v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009)).

Defendant Aguilar argues both reasonable suspicion and probable cause existed to believe Plaintiff was "resisting, evading, or obstructing an officer" in violation of N.M. Stat. Ann. § 30–22–1(D) before he was arrested for concealing identity. This crime consists of "resisting or abusing any . . . peace officer in the lawful discharge of

8

his duties." N.M. Stat. Ann. § 30–22–1(D). The New Mexico Court of Appeals has interpreted the phrase "resisting or abusing" in section 30–22–1(D) to forbid three types of conduct: (1) "physical acts of resistance," *State v. Wade*, 667 P.2d 459, 460 (N.M. Ct. App. 1983); (2) the use of "fighting words," *id.* at 461; and (3) the refusal to "obey" lawful police commands. *New Mexico v. Diaz*, 908 P.2d 258, 259–62 (N.M. Ct. App. 1995); *see also State v. Jimenez*, 392 P.3d 668, 682 (N.M. Ct. App. 2017) (Resisting under subsection (D) "refers not only to a defendant's overt physical act, but also to the failure to act when refusing to obey lawful police commands[.]").

Defendant Aguilar does not argue that Plaintiff engaged in any physical act of resistance prior to his arrest for concealing identity.[1] Nor does Defendant Aguilar contend—and the record fails to show—Plaintiff used any fighting words during their roughly fifteen-second exchange. *See Keylon*, 535 F.3d at 1217 (explaining "abusive speech" under § 30–22–1(D) is limited to fighting words, which "are those which tend to incite an immediate breach of the peace" (quoting *Wade*, 667 P.2d at 461)). To be sure, Plaintiff's repetitive questioning about why Defendant Aguilar had stopped the vehicle could fairly be characterized as rude and insolent. But neither rudeness nor insolence constitutes resistance or abuse of an officer under N.M. Stat. Ann.

---

[1] Defendant Aguilar does contend that Plaintiff physically resisted *after* he was handcuffed and placed under arrest for concealing identity. But as we explained in *Keylon*, this alleged resistance is irrelevant to the issue of whether Defendant Aguilar had reasonable suspicion of an underlying crime to support his demand for identification and Plaintiff's arrest for concealing identity. *See Keylon*, 535 F.3d at 1216 n.1. Our inquiry here necessarily focuses on whether the facts and circumstances gave rise to reasonable suspicion Plaintiff had resisted, evaded, or obstructed Defendant Aguilar *prior* to Plaintiff's arrest for concealing identity. *See id.*

§ 30-22-1(D). *See id.*; *Wade*, 667 P.2d at 460, 462 (holding the defendant did not violate § 30–22–1(D) where he waived his arms, screamed obscenities, and yelled at officers to "get the hell out of the house" but did not threaten the officers).

The question remaining, then, is whether Plaintiff refused to obey a lawful police command. *See Diaz*, 908 P.2d at 259–62. Defendant Aguilar insists we should answer this question in the affirmative because Plaintiff failed to comply with his order to produce identification. But Defendant Aguilar's circular reasoning rests upon a flawed foundation—namely, that he could *lawfully* order Plaintiff to produce identification on pain of arrest absent "reasonable suspicion of some predicate, underlying crime." *See Keylon*, 535 F.3d at 1216. Allowing Defendant Aguilar to stand on Plaintiff's failure to produce identification as the sole basis to arrest him for concealing identity would not only fly in the face of this court's decision in *Keylon* but also toss to the wind Supreme Court precedent. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County, et al.*, 542 U.S. 177, 184 (2004) (holding that "specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity" is necessary to require identification); *Brown v. Texas*, 443 U.S. 47, 52 (1979) (explaining that whatever purpose may be served by "demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it"). This, of course, we cannot do.

But wait, Defendant Aguilar says, surely it was reasonable for him to request identification from Plaintiff during the course of a lawful traffic stop. That may be

10

true.  As a general matter, this court's precedent does permit a police officer to "*ask for identification from passengers*" in a lawfully stopped vehicle even when there is no particularized suspicion the passenger has engaged in or is engaging in criminal activity.  *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (emphasis added).

The question before us, however, is not whether Defendant Aguilar violated the Fourth Amendment by *asking* Plaintiff to provide his ID.  Defendant Aguilar's initial *request* for ID may have been lawful, but he could not—in the absence of "reasonable suspicion of some predicate, underlying crime"—lawfully *arrest* Plaintiff for concealing identity based solely on his failure or refusal to identify himself.  *See Keylon*, 535 F.3d at 1216–17.  The cases Defendant Aguilar cites do not suggest otherwise.  *See United States v. Fernandez*, 600 F.3d 56, 60 (1st Cir. 2010) ("[P]olice *requests* for identifying information typically do not trigger Fourth Amendment concerns." (emphasis added)); *Stufflebeam v. Harris*, 521 F.3d 884, 888 (8th Cir. 2008) ("[A] police officer does not violate the Fourth Amendment by *inquiring* into the identity of a vehicle's passenger during the course of a lawful traffic stop, even absent reasonable suspicion that the passenger has committed a crime." (emphasis added)); *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) ("The police may *ask* people [including passengers in cars] who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure." (emphasis added)); *United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007) ("If an officer may 'as a matter of course' and in the interest of personal safety order a

11

passenger physically to exit the vehicle, he may surely take the minimally intrusive step of *requesting* passenger identification." (emphasis added) (citation omitted)).

In sum, the facts known to Defendant Aguilar when he demanded identification were insufficient to give rise to a particularized and objective basis for suspecting Plaintiff had committed any offense or was engaging in criminal activity. Without reasonable suspicion to believe Plaintiff had violated N.M. Stat. Ann. § 30–22–1(D) or committed some other predicate, underlying crime, Defendant Aguilar lacked probable cause to arrest Plaintiff for concealing identity. *See Keylon*, 535 F.3d at 1217. Thus, Plaintiff has carried his burden of showing Defendant Aguilar violated his Fourth Amendment right to be free from unlawful arrest.

C.

Having concluded Plaintiff has satisfied the first step of our qualified-immunity inquiry, we must now consider whether Plaintiff's asserted Fourth Amendment right was clearly established on August 3, 2014, when Defendant Aguilar effected the challenged warrantless arrest. In concluding Plaintiff carried his burden of demonstrating the law was clearly established at the relevant time, the district court relied on our decision in *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008). On appeal, Plaintiff likewise argues *Keylon* would have put a reasonable officer in Defendant Aguilar's position on adequate notice his conduct violated the Fourth Amendment. We agree.

12

1.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). As a practical matter, "[i]n the context of a qualified immunity defense on an unlawful arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)). Put another way, a defendant is entitled to qualified immunity if she "*could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014).

To be clearly established, ordinarily "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable officer that the nature of his conduct is unlawful." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017). In deciding whether a precedent provides fair notice, the Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Instead, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must

13

have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551).

Here, Plaintiff is able "to identify a [prior] case where an officer acting under similar circumstances as Officer [Aguilar] was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552. That case is *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008). There, the plaintiff, Bertha Keylon, was approached by a police officer outside her home. *Id.* at 1213. The officer was investigating Ms. Keylon's son for committing a felony. *Id.* He asked Ms. Keylon for her son's birth date and address. *Id.* Ms. Keylon said she did not know the information. *Id.* The officer then asked Ms. Keylon for identification. *Id.* Instead of providing her ID, Ms. Keylon walked toward her van. *Id.* The officer put his hand up to prevent Ms. Keylon from getting in the van and asked her where her identification was. *Id.* After Ms. Keylon told him it was inside her house, she began walking toward her home. *Id.* At this point, the officer told Ms. Keylon, "Ma'am I need to see your ID." *Id.* After Ms. Keylon responded, "Well, I'll get my ID when I'm ready[,]" the officer arrested her for concealing identity in violation of N.M. Stat. Ann. § 30–22–3. *Id.*

In the § 1983 action that followed, the arresting officer attempted to justify his conduct by claiming probable cause existed to suspect Ms. Keylon of violating N.M. Stat. Ann. § 30–22–1(D), "resisting, evading, or obstructing an officer." *Id.* at 1216. Because Ms. Keylon neither physically resisted the officer nor uttered any fighting words prior to her arrest, we concluded the officer lacked probable cause to believe she had violated § 30–22–1(D) and could not arrest her for concealing identity. *Id.*

14

at 1217. We further held that the officer was not entitled to qualified immunity because "New Mexico law is clear—no reasonable person in [the arresting officer's] position could have thought he had probable cause to arrest Ms. Keylon." *Id.* at 1220.

The circumstances at issue in *Keylon* are closely analogous to those at issue here. *Keylon* considered the same interplay between N.M. Stat. Ann. §§ 30–22–3 and 30–22–1(D) in the context of a § 1983 claim alleging unlawful arrest in violation of the Fourth Amendment. And in *Keylon*, this court determined materially similar conduct—that is, conduct involving neither physical resistance nor fighting words— neither constituted "resisting, evading, or obstructing" law enforcement nor could justify a warrantless arrest for concealing identity. *Keylon* thus places the constitutional question regarding the illegality of Defendant Aguilar's conduct "beyond debate." *See Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551).

2.

Defendant Aguilar's attempts to distinguish *Keylon* from the circumstances at issue here are unpersuasive. He contends that, in *Keylon*, the plaintiff did not actively obstruct the officer's investigation, while in this case Plaintiff "rudely and insolently attempted to interfere with . . . the lawful discharge of his duties" during the course of the traffic stop. But the facts here, as we must accept them, do not suggest Plaintiff interfered with Defendant Aguilar's ability to speak with or investigate the driver of the vehicle. Plaintiff did not talk while either Defendant Aguilar or the driver were speaking, use a combative tone—much less abusive speech—or physically resist in any way. Nor did Defendant Aguilar ever order Plaintiff to cease his questioning or be

15

quiet. And during the roughly fifteen seconds that elapsed between the moment Plaintiff first asked Defendant Aguilar why he stopped them and when he was ordered to exit the vehicle and placed under arrest, the driver was still searching for her identification. In light of all this, a jury might reasonably find Plaintiff's conduct did not interfere with Defendant Aguilar's discharge of his lawful duties and Defendant Aguilar lacked arguable probable cause to arrest Plaintiff for concealing identity. *See Wade*, 667 P.2d at 460, 462 (finding evidence insufficient to support conviction under § 30–22–1(D) where arresting officer testified the defendant's yelling and screaming interfered with investigation but admitted he could still hear what the defendant's wife said); *cf. City of Roswell v. Marin*, No. 34,286, 2015 WL 6034246, at *3–5 (N.M. Ct. App. Sept. 2, 2015) (unpublished) (explaining the defendant obstructed an officer in violation of city ordinance when she refused to obey the officer's order to stop verbal obstruction of the officer's questioning of the defendant's husband during a witness interview). Accordingly, these facts are sufficient for *Keylon* to provide clearly established guidance to an objective officer in Defendant Aguilar's position.

Defendant Aguilar also contends the warrantless arrest in *Keylon* occurred on the sidewalk and lawn in front of Ms. Keylon's home, whereas Plaintiff was a passenger in a lawfully stopped vehicle. We decline to cabin *Keylon* so narrowly. As noted above, Defendant Aguilar was free to *request* identification from Plaintiff during the traffic stop. *See Rice*, 483 F.3d at 1084. But Defendant Aguilar did not merely *ask* for identification; rather, he *arrested* Plaintiff for his failure to immediately produce it on demand without possessing particularized reasonable suspicion of an underlying

16

crime. Defendant Aguilar has not explained—nor do we see—how Plaintiff's status as a passenger in a vehicle could obviate the threshold inquiry under *Keylon* into the arresting officer's reasonable suspicion of another, predicate offense. *See* 535 F.3d at 1216–17. Because this distinction does not bear on the operation of the predicate-offense requirement under *Keylon*, it is a distinction without difference for purposes of our clearly-established-law analysis.

Finally, Defendant Aguilar contends *Romero v. City of Clovis*, No. 1:17-CV-00818-PJK-GBW, 2019 WL 2327660 (D.N.M. May 31, 2019) (Kelly, J., sitting by designation), supports his qualified-immunity defense. Defendant Aguilar's reliance on *Romero* is misguided. To begin, *Romero* is a district court decision, which "[m]any Courts of Appeals [ ] decline to consider . . . when determining if constitutional rights are clearly established for purposes of qualified immunity." *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)); *see also Apodaca v. Raemisch*, 864 F.3d 1071, 1079 (10th Cir. 2017) (explaining "a district court's holding is not controlling in any jurisdiction").

But even assuming such a decision is entitled to consideration in the clearly-established-law analysis, there are several facts that distinguish *Romero* from this case. Notably, the circumstances presented and facts available to the arresting officer gave rise to reasonable suspicion the plaintiff in *Romero* had committed or was committing a crime (i.e., shoplifting) when the officer demanded identification and subsequently arrested her for concealing identity. 2019 WL 2327660, at *2–4. That was not the

17

situation here. As explained above, Defendant Aguilar had no particularized reasonable suspicion of predicate, underlying criminal activity on Plaintiff's part that could have supported his warrantless arrest for concealing identity. Far from vindicating Defendant Aguilar's conduct, therefore, *Romero* merely highlights the ways in which the two cases are fundamentally different from each other. Accordingly, Defendant Aguilar's reliance on *Romero* is unavailing.

We thus conclude that, in light of *Keylon*, a reasonable officer in Defendant Aguilar's position would have known that his conduct, viewed in the light most favorable to Plaintiff, violated the Fourth Amendment. Defendant Aguilar is therefore not entitled to qualified immunity on Plaintiff's unlawful-arrest claim.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's order denying Defendant Aguilar qualified immunity on Plaintiff's § 1983 unlawful-arrest claim.

18