**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ALBERT BUSTILLOS,

    Plaintiff - Appellee,

v.

THE CITY OF ARTESIA; DAVID
BAILEY,

    Defendants - Appellants.

No. 22-2046

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:20-CV-01060-JCH-GJF)**
_____

K. Renee Gantert of Atwood, Malone, Turner & Sabin, P.A., Roswell, New Mexico (Bryan Evans, Atwood, Malone, Turner & Sabin, P.A., with her on the briefs), for Defendant-Appellants.

Joseph P. Kennedy of The Kennedy Law Firm, P.C., Albuquerque, New Mexico (Shannon L. Kennedy, The Kennedy Law Firm, P.C., with him on the brief), for Plaintiff-Appellee.

_____

Before **BACHARACH, MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

Albert Bustillos sued Corporal David Bailey and the City of Artesia, alleging violations of his rights under the First and Fourth Amendments and New Mexico law. Corporal Bailey and the City moved for summary judgment. The district court denied the motion, and as relevant here, rejected Corporal Bailey's qualified immunity defense. This interlocutory appeal followed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of qualified immunity. And, because Defendants have failed to establish our jurisdiction to address Mr. Bustillos's state-law claims, we dismiss that portion of the appeal.

## I

## A

Mr. Bustillos is an "independent journalist who films content for his YouTube channel."[1] Aplt. App. at 173. On September 11, 2018, he went to the Navajo oil refinery in Artesia, New Mexico (Refinery) "to film a story on how the refinery works to turn fuel into gas or asphalt." Aplt. App. at 173. A fence surrounds the Refinery and concrete barriers separate the Refinery

---

[1] Our jurisdiction is limited by the interlocutory nature of this appeal. For that reason, we draw these facts from the district court's summary judgment order, as it comprises "the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Fogarty* v. *Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008).

2

from the public road. Between the fence and the concrete barriers is an "open area that allows pedestrian travel." Aplt. App. at 174.

Refinery security approached Mr. Bustillos while he was standing outside the fence and concrete barriers. Security guards asked Mr. Bustillos what he was doing, and he said he was filming content for a story and planned to stay on public property. Mr. Bustillos then continued filming at the perimeter of the Refinery. Mr. Bustillos remained outside the concrete barriers, walking along the road. Meanwhile, a Refinery security guard called 911 and reported a "suspicious person" on the "outside of the fence" filming "in towards the refinery." Aplt. App. at 174.

Officers from the Artesia Police Department responded. Corporal Marcie Sanchez arrived first and asked Mr. Bustillos for his identification. Mr. Bustillos refused, "explaining that he was doing a story and had stayed on public property the entire time." Aplt. App. at 175. Mr. Bustillos added, "he would not give [Corporal Sanchez] his identification because he had not broken the law"—a prerequisite, he said, to having to identify himself to law enforcement. Aplt. App. at 175.

Corporal Bailey arrived at the scene soon after. He "observed [Mr. Bustillos] . . . arguing with [Corporal] Sanchez" and "film[ing] with his handheld camera." Aplt. App. at 175. As Corporal Bailey approached, Mr. Bustillos explained he was an independent journalist. Corporal Bailey

3

asked Mr. Bustillos for identification and again, Mr. Bustillos refused. Corporal Bailey then arrested Mr. Bustillos "for failure to identify himself in violation of N.M. Stat. Ann. § 30-22-3." Aplt. App. at 177.

**B**

Mr. Bustillos sued Defendants in New Mexico state court alleging violations of his First and Fourth Amendment rights under 42 U.S.C. § 1983. He also brought claims under the New Mexico Tort Claims Act.

Defendants removed the case to federal district court and moved for summary judgment. Corporal Bailey contended he was entitled to qualified immunity from Mr. Bustillos's federal claims. The district court disagreed, denying qualified immunity under the familiar two-step framework. Under the first prong, the district court concluded a reasonable jury could find Corporal Bailey violated Mr. Bustillos's First and Fourth Amendment rights. And under the second prong, the district court decided Mr. Bustillos successfully proved his Fourth Amendment[2] rights were clearly established. The district court denied summary judgment on Mr. Bustillos's state-law

---

[2] The district court did not discuss clearly established law with respect to Mr. Bustillos's First Amendment claim. But, as we soon explain, Corporal Bailey offered no argument to the district court suggesting Mr. Bustillos's First Amendment rights were *not* clearly established.

claims, finding questions of fact precluded summary judgment. Aplt. App. at 189. This timely appeal followed.

## II

We begin with Corporal Bailey's contentions regarding qualified immunity. Because this is an interlocutory appeal, we first discuss the legal principles that limit our jurisdiction and guide our review. We then consider, and reject, each of Corporal Bailey's appellate challenges.

## A

We have jurisdiction to review "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Orders denying summary judgment are ordinarily not appealable final [decisions] for purposes of . . . § 1291." *Sawyers* v. *Norton*, 962 F.3d 1270, 1281 (10th Cir. 2020) (quoting *Roosevelt-Hennix* v. *Prickett*, 717 F.3d 751, 753 (10th Cir. 2013)). "The denial of qualified immunity to a public official, however, is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Id.* (quoting *Fancher* v. *Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013)); *see also Mitchell* v. *Forsyth*, 472 U.S. 511, 530 (1985). Abstract issues of law involve "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation" and "(2) whether that law was clearly established at the time of the alleged violation." *Est. of Valverde ex rel. Padilla* v. *Dodge*, 967 F.3d 1049, 1058

5

(10th Cir. 2020) (quoting *Roosevelt-Hennix*, 717 F.3d at 753). In the interlocutory posture, we review legal issues, and "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Fogarty*, 523 F.3d at 1154; *see also Packard* v. *Budaj*, 86 F.4th 859, 864, 866–67 (10th Cir. 2023) (rejecting on jurisdictional grounds defendants' challenges to district court factual conclusions on an interlocutory appeal from the denial of qualified immunity).[3]

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas* v. *Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White* v. *Pauly*, 580 U.S. 73, 78–79 (2017) (*per curiam*)). To overcome a qualified immunity defense, a plaintiff must "demonstrate (1) that the official violated a statutory or constitutional

---

[3] This well-settled rule has three limited exceptions. *Lewis* v. *Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (permitting review of factual conclusions in the interlocutory posture when the district court "fails to identify the particular charged conduct that it deemed adequately supported by the record," when the "version of events" credited by the district court is "blatantly contradicted by the record," and when evaluating "the factual inferences that arise from a complaint at the motion to dismiss stage."). None of these exceptions applies here, and no party argues otherwise.

right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat* v. *Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quoting *Quinn* v. *Young*, 780 F.3d 998, 1004 (10th Cir. 2015)). "If we conclude that the plaintiff has not met his burden as to either part of the two-prong inquiry, we must grant qualified immunity to the defendant." *Andersen* v. *DelCore*, 79 F.4th 1153, 1163 (10th Cir. 2023).

With these legal principles in mind, we turn to Corporal Bailey's appellate arguments.

**B**

As to the Fourth Amendment claim, Corporal Bailey contends the district court erred by finding Mr. Bustillos satisfied both steps of the qualified immunity analysis. We disagree.

**1**

To defeat qualified immunity at the first step, Mr. Bustillos must prove a reasonable jury could find Corporal Bailey violated the Fourth Amendment by engaging in a warrantless arrest. Generally, the Fourth Amendment permits a warrantless arrest supported by probable cause the suspect has committed a crime. *Mocek* v. *City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015). Here, Corporal Bailey arrested Mr. Bustillos for the misdemeanor offense of "concealing his identity in violation of New Mexico

law"—namely, N.M. Stat. Ann. § 30-22-3.[4] Aplt. App. 180. Our Fourth Amendment jurisprudence is clear, however, that an officer may not lawfully arrest someone for concealing identity without "reasonable suspicion of some predicate, underlying crime." *Keylon* v. *City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).

Here, then, our task is two-fold. We must first determine whether Corporal Bailey "possessed reasonable suspicion" Mr. Bustillos "had committed or was committing a crime such that the demand for his ID was lawful." *Corona* v. *Aguilar*, 959 F.3d 1278, 1283 (10th Cir. 2020). If so, we then must ask "whether there also was probable cause to arrest" Mr. Bustillos for refusing Corporal Bailey's demand for identification. *Id.*

---

[4] That statute is called "Concealing Identity" and it provides:

> Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

> Whoever commits concealing identity is guilty of a petty misdemeanor.

> N.M. Stat. Ann. § 30-22-3.

8

Because we conclude Corporal Bailey lacked reasonable suspicion of a predicate crime, we limit our analysis to the first question.

"For reasonable suspicion to exist, an officer must have a 'particularized and objective basis for suspecting' criminal conduct under the totality of the circumstances." *Id.* (quoting *United States* v. *Cortez*, 449 U.S. 411, 417–18 (1981)). We apply this objective standard based on "the perspective of the reasonable officer." *United States* v. *Guerrero,* 472 F.3d 784, 787 (10th Cir. 2007).[5] Even still, the "officer must point to specific, articulable facts" to support reasonable suspicion. *United States* v. *Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010). While not an onerous standard, *id.* at 1153, reasonable suspicion squarely demands "something more than an inchoate and unparticularized suspicion or hunch," *United States* v. *Hauk,* 412 F.3d 1179, 1186 (10th Cir. 2005) (quoting *United States* v. *Sokolow,* 490 U.S. 1, 7 (1989)).

We understand Corporal Bailey to make two reasonable-suspicion arguments supporting reversal. Corporal Bailey first suggests the district court erroneously required him to prove reasonable suspicion of some

---

[5] Corporal Bailey seems to suggest the district court necessarily misapplied the reasonable suspicion standard by viewing the facts in the light most favorable to Mr. Bustillos, as required by the summary judgment standard. Opening Br. at 14. We see no basis in the record or the law for such an argument.

9

specific crime committed by Mr. Bustillos. According to Corporal Bailey, that he harbored generalized suspicions *something* was amiss when he encountered Mr. Bustillos at the Refinery satisfied the Fourth Amendment. Opening Br. at 21. Second, even if reasonable suspicion of a specific crime was required, says Corporal Bailey, the district court erred by finding he did not have it when arresting Mr. Bustillos for concealing his identity. Neither argument is availing.

Corporal Bailey's first contention fails quickly. Our cases are clear: law enforcement needs reasonable suspicion of a "predicate, underlying crime," not a generalized suspicion a person is simply up to no good, to support an arrest for concealing identity. *Keylon*, 535 F.3d at 1216 (warrantless arrest for the offense of concealing identity will not satisfy the Fourth Amendment unless supported by reasonable suspicion suspect committed a predicate offense); *see also Mocek*, 813 F.3d at 922–23 (same); *Corona*, 959 F.3d at 1283–85 (same).

As Corporal Bailey appears to acknowledge, we look to the "totality of the circumstances" to determine whether an officer had reasonable suspicion. Opening Br. at 21–22 (citing *District of Columbia* v. *Wesby*, 583 U.S. 48, 61 (2018)). But Corporal Bailey cites no authority suggesting the Fourth Amendment's general mandate to consider the totality of the circumstances gave him reasonable suspicion simply because, according to

10

him, Mr. Bustillos seemed suspicious.[6] The law has long been otherwise. Corporal Bailey's argument is little more than an attempt to rely on "[i]ncohate suspicions and unparticularized hunches" to satisfy the Fourth Amendment. *Simpson*, 609 F.3d at 1147.

Corporal Bailey next argues he had reasonable suspicion Mr. Bustillos committed specific, underlying crimes and insists the district court mistakenly held otherwise. We cannot agree.

In the district court, Corporal Bailey contended it was reasonable to suspect Mr. Bustillos of trespassing, committing disorderly conduct, engaging in potential terrorist activity, and loitering. The district court considered, and rejected, Corporal Bailey's arguments about these specific crimes.[7] We discern no error in the district court's analysis.

---

[6] Confusingly, Corporal Bailey acknowledges an "officer may not arrest someone for concealing identity without reasonable suspicion of some predicate, underlying crime." Opening Br. at 12 (quoting *Mocek*, 813 F.3d at 922).

[7] Corporal Bailey identified these particular offenses after Mr. Bustillos's arrest, while preparing for trial. Aplt. App. at 178. As the district court found, based on Corporal Bailey's deposition testimony, "[a]t the time [Corporal] Bailey arrested [Mr.] Bustillos, his understanding of the law for concealing identification based on his academy training was that if he was dispatched to a call for service, he was within his rights to demand identification." Aplt. App. at 178. But through his research, Corporal Bailey explained he learned he had to have "reasonable suspicion of a predicate crime" to support an arrest for failing to produce identification. Aplt. App. at 178. At that point, Corporal Bailey identified crimes he believed were

11

### i. Trespass

Under New Mexico law, "[c]riminal trespass consists of knowingly entering or remaining upon posted private property without possessing written permission from the owner or person in control of the land" or of "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." N.M. Stat. Ann. § 30-14-1(A)–(B). The district court concluded, "[c]onstruing [the] facts in Plaintiff's favor, a jury could determine that Bailey did not have reasonable suspicion to believe that [Bustillos] committed a trespass." Aplt. App. at 185.[8] In support, the district

---

predicate offenses supporting the arrest of Mr. Bustillo and litigated the qualified immunity issues on that basis. Aplt. App. at 178.

Corporal Bailey appears to suggest the district court erred by confining its analysis to the crimes he identified. But on this record, we find it entirely reasonable the district court did so.

[8] The district court also said there was "a fact question as to whether Bailey had reason to believe that Bustillos committed a trespass and as to whether Bailey's mistaken belief that Bustillos may have been trespassing was reasonable." Aplt. App. at 185. But the parties do not contend the historical facts are disputed, and the "objective legal reasonableness of the [defendant]'s actions is a legal question." *Keylon* v. *City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008) (quoting *Roska ex rel. Roska* v. *Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003)). Moreover, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson* v. *Jones*, 515 U.S. 304, 319–20 (1995).

12

court found security approached Mr. Bustillos when he arrived at the

Refinery, and after the encounter,

> Bustillos walked next to the refinery while filming it. The area
> between the fence and the barriers is an open area that allows
> pedestrian travel the length of the property. There are no signs
> stating private property or prohibiting trespass in the area on which
> Bustillos was walking. Bustillos, however, walked alongside the
> highway because the cement barriers in front of the property were
> several feet on public property.

Aplt. App. at 174. The district court found "none of the security guards

reported that Bustillos was trespassing." Aplt. App. at 185.

Corporal Bailey urges reversal, insisting he had reasonable suspicion

of trespass based on the totality of the circumstances. He claims the district

court "ignored" his "undisputed belief at the time of his encounter [with Mr.

Bustillos] that the area from which Bustillos was filming was private

Navajo property." Opening Br. at 16. He also insists the district court

overlooked his "undisputed belief Bustillos had walked in an area that was

private property." Opening Br. at 29. According to Corporal Bailey, the

---

Here, the district court, viewing the summary judgment evidence in favor of the nonmovant, concluded Mr. Bustillos satisfied his burden to show a constitutional violation at the first step of the qualified immunity analysis. Corporal Bailey challenges only the district court's legal conclusion regarding his reasonable suspicion of trespass. Relatedly, he appears to contend he was reasonably mistaken about the Refinery's boundaries. We focus on these legal questions in our *de novo* review. To the extent Corporal Bailey advances a fact-bound contention, we are without jurisdiction to resolve it.

reports from dispatch "undoubtedly suggest close proximity to the refinery's fence, which, combined with Corporal Bailey's understanding that the refinery owned all the way to the curb, raised a reasonable suspicion of trespass." Opening Br. at 30. We are not persuaded.

"'Reasonable suspicion' is a question of law for the court." *United States* v. *Sandoval*, 29 F.3d 537, 544 (10th Cir. 1994). A reasonable mistake of fact may support reasonable suspicion. *United States* v. *Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009) ("[W]e may weigh objectively reasonable mistakes of fact made by the officer in favor of reasonable suspicion."). But the Fourth Amendment does not abide "[i]nchoate suspicions and unparticularized hunches." *Simpson*, 609 F.3d at 1147.

While Corporal Bailey insists he "underst[ood]" the Refinery "owned all the way to the curb," Opening Br. at 30, he has provided no "specific, articulable" facts to support his understanding. *Id.* And an officer's subjective belief is "irrelevant" for qualified immunity purposes. *Anderson* v. *Creighton*, 483 U.S. 635, 641 (1987). The district court's factual findings on this issue, which "we are not at liberty to review," *Fogarty*, 523 F.3d at 1154, undermine Corporal Bailey's assertion that he reasonably believed the area between the Refinery's fence and concrete barriers was private property. Aplt. App. at 174 ("The area between the fence and the barriers is an open area that allows pedestrian travel the length of the property.").

14

Nor does Corporal Bailey do more than speculate Mr. Bustillos walked between the concrete barriers and the Refinery's fence. When Corporal Bailey encountered him, Mr. Bustillos was nowhere near the area Corporal Bailey believed to be private property. Video at 16:15–24:00. Mr. Bustillos also "repeated that he remained on public property when [filming the Refinery], and he knew the boundaries and the applicable laws." Aplt. App. at 175. The information available to Corporal Bailey thus fails to support the reasonableness of his suspicion or mistake.

Under these circumstances, we agree with the district court that, based on the summary judgment record, an officer in Corporal Bailey's position would not have had an objectively reasonable basis for suspecting Mr. Bustillos committed trespass under New Mexico law.[9]

---

[9] Our colleague in dissent reaches a different conclusion on trespass, agreeing with Corporal Bailey that a reasonable officer could have believed the property between the Refinery's fence and concrete barriers was private and that Mr. Bustillos entered it. But we respectfully fail to see how these legal conclusions are sustainable on the record before us.

For example, the dissent finds the appearance of the area could reasonably suggest the path between the Refinery's fence and the concrete barriers was private property. Partial Dissent at 6. According to the dissent, Mr. Bustillos characterizes the area between the Refinery's fence and concrete barriers as "a clear pedestrian right of way" and "does not explain or support this assertion." Partial Dissent at 6. But it was the district court's finding that this "open area . . . allows pedestrian travel the length of the property." Aplt. App. at 174. Corporal Bailey's belief about the

### ii. Disorderly Conduct

Disorderly conduct involves "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." N.M. Stat. Ann. § 30-20-1. The New Mexico Supreme Court has described "conduct that tends to disturb the peace" as "a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State* v. *Florstedt*, 419 P.2d 248, 249 (N.M. 1966) (internal quotation marks and citation omitted); *see also Buck* v. *City of Albuquerque*, 549 F.3d 1269, 1285 (10th Cir. 2008) (finding plaintiff's conduct did not provide reasonable suspicion of disorderly conduct under New Mexico law because, on the facts found by the district court, the plaintiff's conduct did not "threaten[] to incite violence or create 'consternation and alarm[.]'" (citation omitted)). "Conduct [under the disorderly conduct statute] is not criminal, or suspicious, simply because it

---

property, even if mistaken, cannot be reasonable in light of the district court's factual finding, which we are bound to accept.

We likewise see no basis in the record for the dissent's conclusion that "a police officer could reasonably assume that Mr. Bustillos had used this walking path while filming the refinery." Partial Dissent at 9. There is no evidence Corporal Bailey was told Mr. Bustillos used the walking path, nor does he claim he saw Mr. Bustillos walking on it.

16

is boisterous or unreasonably loud; the conduct must also tend to disturb the peace." *City of Las Cruces* v. *Flores*, 2020 WL 1845195, at *3 (N.M. Ct. App. 2020). The statute must be construed narrowly. *State* v. *Correa*, 222 P.3d 1, 7 (N.M. 2009).

The district court was "not convinced that [Corporal] Bailey had reasonable suspicion that [Mr.] Bustillos violated § 30-20-1" because Mr. Bustillos was not attempting to enter the Refinery or causing a disturbance. Aplt. App. at 183. On appeal, Corporal Bailey contends the district court committed legal error by failing to account for the uniquely sensitive setting of the Refinery. In support, he relies on our decision in *Mocek,* which emphasized "the uniquely sensitive setting" of airport security checkpoints. 813 F.3d at 924. There, we explained "[o]rder and security are of obvious importance at an airport security checkpoint. . . . As a result, conduct that is relatively benign elsewhere might work to disturb the peace at these locations." *Id.* Again, we must disagree with Corporal Bailey.

A simple confrontation is not enough to establish disorderly conduct under New Mexico law. *See, e.g.*, *Flores*, 2020 WL 1845195, at **3–4 ("The public's sensibilities are tough enough that, typically, the act of yelling alone does not shatter public order or threaten to do so. . . . Without evidence of anything more than Defendant's loud remarks and cell phone recording of the officers, all of which occurred in their presence, the testimony did not

17

give rise to an objectively reasonable suspicion that Defendant had committed or was committing the crime of disorderly conduct."); *see also State* v. *Hawkins*, 991 P.2d 989, 992 (N.M. Ct. App. 1999) ("The mere fact that people may have heard [the d]efendant's remarks, however loud or offensive they may have been, is insufficient to support a charge of disorderly conduct.").

And Mr. Bustillos's conduct, as the district court viewed it, was not violent, distracting, or disruptive. Mr. Bustillos "was not attempting to enter the refinery": instead, he was "filming from a public location" behind the concrete barriers outside the Refinery. Aplt. App. at 182. As he filmed, he walked in a manner "that d[id] not suggest he was likely to cause violence or disturb[] the peace of the area," and, when asked, he identified himself as a journalist filming for a story. Aplt. App. at 182–83. On these facts, which we are not free to revisit, Corporal Bailey lacked reasonable suspicion Mr. Bustillos committed disorderly conduct.

To be sure, the location of an investigative stop is "a factor that contributes to an officer's reasonable suspicion." *See, e.g.*, *United States* v. *Guardado*, 699 F.3d 1220, 1223 (10th Cir. 2012) (considering that a stop occurred in a high crime area in the reasonable suspicion analysis). And we agree with Corporal Bailey that the sensitive nature of the Refinery is part of the reasonable suspicion inquiry here. But contrary to Corporal

18

Bailey's position, the district court fully considered the unique setting, in accordance with *Mocek*. Mr. Bustillos was not attempting to enter the Refinery, the district court reasoned, nor was he causing a disturbance "in a crowded security line that distracted the security guards in a manner that threatened order and security at the refinery." Aplt. App. at 182. We thus cannot say the district court committed legal error, as Corporal Bailey insists.

### iii. Potential Terrorist Activity

Corporal Bailey also contends the totality of the circumstances established reasonable suspicion of terrorism. On this front, Corporal Bailey has identified no specific offense but posited instead Mr. Bustillos's suspected engagement in "potential terrorist activity." Opening Br. at 26. The district court rejected Corporal Bailey's argument, and so do we.

On appeal, Corporal Bailey insists the district court should have found he had reasonable suspicion because "the refinery is part of the nation's uniquely critical energy sector and as such, a potential terrorist target," Opening Br. at 27, Mr. Bustillos filmed the Refinery on the anniversary of the September 11th terrorist attacks, and Mr. Bustillos's behavior, in Corporal Bailey's experience, was unusual, *id.* at 28–29. The problem for Corporal Bailey's legal argument is the district court *did*

consider these unique facts. Aplt. App. at 184.[10] As the district court observed, the record showed Mr. Bustillos had a reason to film the Refinery; it "is a place of public interest." Aplt. App. at 184. And when asked about what he was doing, Mr. Bustillos informed Refinery security and law enforcement he was an independent journalist gathering content for a story. Aplt. App. at 184. Nor was Mr. Bustillos "carrying any sort of weapons," the district court observed, or acting in a threatening manner. Aplt. App. at 184.

At bottom, we discern no reversible error in the district court's conclusion Corporal Bailey lacked reasonable suspicion Mr. Bustillos was involved in crimes related to potential terrorist activity.

### iv. Loitering and Prowling

Section 5-1B-3 of the Artesia Municipal Code states it is "unlawful for any person to loiter or prowl in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the

---

[10] Corporal Bailey at times concedes as much. *See* Opening Br. at 27 (describing the sensitive nature of the Refinery as "a fact the Court itself acknowledged"); Opening Br. at 28 (admitting "[t]he District Court did not dispute [the September 11 date] was of 'some relevance'").

safety of persons or property in the vicinity."[11] The district court rejected Corporal Bailey's argument that filming the Refinery could give rise to reasonable suspicion Mr. Bustillos was loitering or prowling. It defined loitering as "to spend time idly or to hang around aimlessly." Aplt. App. at 185 (citing *Balizer* v. *Shaver*, 1971-NMCA-010, ¶¶ 20-21, 82 N.M. 347 and "Loiter," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/loiter). It defined prowling as "to move about or wander stealthily in or as if in search of prey" or "to roam over in a predatory manner." Aplt. App. at 185 (quoting "Prowl," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/prowl).

The district court explained "[t]he facts here, construed in Plaintiff's favor, do not suggest Plaintiff was acting with idleness, lack of purpose, stealth, or in a predatory manner." Aplt. App. at 185. Instead, Mr. Bustillos "was actively filming in the open during daytime hours while walking outside the perimeter of the refinery." Aplt. App. at 185–86. Nothing in the record suggests otherwise. Corporal Bailey simply insists the district court failed to consider the "whole picture." Opening Br. at 30–31.[12] But as our

---

[11] In the district court, Mr. Bustillos argued the City's loitering and prowling ordinance "suffers from constitutional infirmness." Aplt. App. at 106. He does not reprise this argument on appeal, so we do not consider it.

[12] Corporal Bailey asserts the district court erred by relying on the dictionary definitions of "loiter" and "prowl" to interpret the ordinance.

discussion thus far shows, we are unpersuaded. Mr. Bustillos actions, while perhaps unusual in the experience of Corporal Bailey and Refinery security, did not "warrant alarm for the safety of persons or property" at the Refinery. § 5-1B-3, Artesia Municipal Code.

\* \* \*

As Corporal Bailey admits, "Plaintiff's Fourth Amendment claims rise and fall on whether Corporal Bailey possessed reasonable suspicion to demand Plaintiff's identification. If Corporal Bailey lacked reasonable suspicion, then it was not lawful for him to arrest Plaintiff when he failed to produce identification." Aplt. App. at 30; *see also* Opening Br. at 39. And that is precisely the result here. We thus affirm the district court's conclusion that, for purposes of the first prong of the qualified immunity inquiry, Mr. Bustillos established a Fourth Amendment violation.[13]

---

Opening Br. at 31. This argument is not developed on appeal, so we do not consider it. *Adler* v. *Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

[13] Corporal Bailey contends the district court failed to consider: (1) the sensitive nature of the Refinery; (2) Corporal Bailey's belief Mr. Bustillos was on private property; (3) the information conveyed to Corporal Bailey by Refinery security; (4) Mr. Bustillos's conduct (filming); and (5) Corporal Bailey's experience. Opening Br. at 13–23. To the extent Corporal Bailey advances a discrete argument that the district court committed a legal error by failing to consider the totality of the circumstances, we disagree. As made plain by our discussion of each crime invoked by Corporal Bailey, the district court appropriately considered each of these facts, alone and cumulatively, to find Corporal Bailey lacked reasonable suspicion. To the

**2**

Turning to the second prong of the inquiry, we now must consider whether Mr. Bustillos met his burden to show his Fourth Amendment rights were *clearly established*. On this front, "the plaintiff [generally] must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cox* v. *Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020) (quoting *Callahan* v. *Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (10th Cir. 2015)). The precedent must have clearly established the right "in light of the specific context of the case, not as a broad general proposition." *Mullenix* v. *Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*); *accord Tolan* v. *Cotton*, 572 U.S. 650, 657 (2014) (emphasizing "the importance of drawing inferences in favor of the nonmovant" when deciding the clearly-established prong of the standard and taking care "not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." (citations omitted)). The precedent must provide "fair

---

extent Corporal Bailey contends these facts, unmoored from a specific crime, established some *generalized* reasonable suspicion, as we have explained, we disagree.

warning" to a defendant "that their alleged [conduct] was unconstitutional." *Tolan*, 572 U.S. at 656.

The district court concluded Corporal Bailey violated clearly established law by arresting Mr. Bustillos for refusing to produce identification without reasonably suspecting he committed a predicate, underlying crime. Aplt. App. at 187. In support, the district court relied on our decision in *Keylon*, which held "to arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying crime." 535 F.3d at 1216. Corporal Bailey urges reversal, asserting neither Mr. Bustillos nor the district court identified a factually similar case to the one before us. This argument is unavailing.

The district court correctly concluded our decision in *Keylon* supplied the clearly established law. There, an officer approached Ms. Keylon outside her home seeking information about her son. *Keylon*, 535 F.3d at 1213. She told the officer she had no such information, and then, the officer demanded her identification. *Id.* Ms. Keylon refused to provide it, and the officer arrested her for concealing her identity in violation of N.M. Stat. Ann. § 30-22-3—the same statute at issue here. *Id.* She then sued the arresting officer under § 1983 for violating her Fourth Amendment rights. After a trial ended with a verdict in favor of the arresting officer, Ms. Keylon moved for judgment as a matter of law under Fed. R. Civ. P. 50(b). *Id.* at 1213–14. The

24

district court denied the motion, and we reversed, finding, as a matter of law, the arresting officer was not entitled to qualified immunity. *Id.* at 1214–16.

As relevant to our analysis here, the arresting officer claimed that before he asked for identification, he had reason to suspect Ms. Keylon violated N.M. Stat. Ann. § 30-22-1, which prohibits "resisting or abusing . . . [a] peace officer in the lawful discharge of his duties." *Id.* at 1216–17. But we disagreed, finding the statute did not criminalize merely evasive speech, like Ms. Keylon's. *Id.* Because the arresting officer lacked reasonable suspicion Ms. Keylon committed a "predicate, underlying crime," we concluded Ms. Keylon's arrest for concealing her identity violated the Fourth Amendment. *Id.* at 1217. Importantly, our conclusion in *Keylon* adheres to principles long established by the Supreme Court. *Id.* at 1216–17 (citing *Brown* v. *Texas*, 443 U.S. 47, 52 (1979) ("But even assuming [the goal of preventing crime] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.")).

25

Corporal Bailey arrested Mr. Bustillos for refusing to provide identification in violation of N.M. Stat. Ann. § 30-22-3, and he did so simply *because* Mr. Bustillos refused to identify himself. *Keylon* thus provided Corporal Bailey "fair warning" that an arrest for concealing identity without reasonable suspicion of a predicate, underlying crime violates the Fourth Amendment. *Tolan*, 572 U.S. at 656.[14]

Still, Corporal Bailey insists the district court defined clearly established law at an inappropriately "high level of generality." Opening Br. at 35–36. True, we must take care not to do so, given the Supreme Court's "*repeated* warning." Opening Br. at 35; *see also City of Tahlequah, Oklahoma* v. *Bond*, 595 U.S. 9, 12 (2021). But ours is not a close case. *Keylon* makes it "sufficiently clear that every reasonable official would have

---

[14] We have since demonstrated our understanding that "in light of *Keylon*" an officer violates the Fourth Amendment when making an arrest for concealing identity under N.M. Stat. Ann. § 30-22-3 without reasonable suspicion of a predicate, underlying crime. *See Corona*, 959 F.3d at 1285–88 (affirming the denial of qualified immunity at summary judgment to an officer who arrested a suspect for concealing his identity, relying on *Keylon* to find the officer lacked reasonable suspicion the suspect resisted, evaded, or obstructed an officer in violation of N.M. Stat. Ann § 30-22-1(D)). *Corona* was decided after Mr. Bustillos's arrest, but "[t]his court has recognized that a case decided after the incident underlying a § 1983 action can state clearly established law when that case ruled that the relevant law was clearly established as of an earlier date preceding the events in the later § 1983 action." *Soza* v. *Demsich*, 13 F.4th 1094, 1100 n.3 (10th Cir. 2021). We thus find *Corona* relevant to our analysis and consistent with our disposition.

26

understood that what he is doing," if the facts found by the district court are proven true, violates the Fourth Amendment. *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix*, 577 U.S. at 11). And in any event, we require only the relevant "*legal principle* [to] clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63 (emphasis added). Here, a "materially similar" case like *Keylon* will do. *Shepherd* v. *Robbins*, 55 F.4th 810, 815 (10th Cir. 2022).

We conclude Mr. Bustillos satisfied his burden to show Corporal Bailey violated his clearly established Fourth Amendment rights. He has therefore met his burden under the second prong of the qualified immunity analysis.

***

Because the district court correctly found Mr. Bustillos carried his burden on both prongs of the qualified immunity analysis, we affirm the denial of summary judgment on the Fourth Amendment claim.

**C**

The district court also denied Corporal Bailey's qualified immunity defense to Mr. Bustillos's First Amendment retaliation claim. Corporal Bailey argues this was error. We disagree.

As to this claim, only the first element of qualified immunity is at issue. On appeal, Corporal Bailey appears to suggest Mr. Bustillos's First

27

Amendment rights were not clearly established, Opening Br. at 42–43, but he did not make that argument in the district court, Aplt. App. at 41–42, 162–63. When a party fails to make an argument in the district court, we generally consider it forfeited and will review only for plain error. *A.N. ex rel. Ponder* v. *Syling*, 928 F.3d 1191, 1194 n.2 (10th Cir. 2019) (finding argument made on appeal but not raised in the district court in a § 1983 action forfeited); *Ave. Cap. Mgmt. II, L.P.* v. *Schaden*, 843 F.3d 876, 885 (10th Cir. 2016) ("We may consider forfeited arguments under the plain-error standard."). But when a litigant fails "to argue for plain error [review] and its application on appeal . . . ordinarily, we will not review the argument at all." *Havens* v. *Colo. Dep't of Corr.*, 897 F.3d 1250, 1260 (10th Cir. 2018) (quoting *Richison* v. *Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011)). Corporal Bailey has not urged plain error review on appeal. Therefore, we assume the law is clearly established and address only whether a reasonable jury could find Corporal Bailey's conduct violated Mr. Bustillos's First Amendment rights.

**1**

If a government official takes adverse action against an individual because that person engaged in protected speech, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the person may generally succeed on a First Amendment claim. *Nieves* v.

28

*Bartlett*, 139 S. Ct. 1715, 1722 (2019). To prove a First Amendment retaliation claim, a plaintiff must show "(1) he was engaged in constitutionally protected activity[;] (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Mocek*, 813 F.3d at 930 (*quoting Nielander* v. *Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). The Supreme Court has held a plaintiff must show "but-for" causation—meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive—to prove the third element of a First Amendment retaliation claim. *Nieves*, 139 S. Ct. at 1722.

**2**

In the district court, Defendants challenged only the third element— whether Mr. Bustillos's exercise of his First Amendment rights was a but-for cause of his arrest.[15] Aplt. App. at 189. The district court found "Plaintiff has some evidence of but-for causation sufficient to" survive summary judgment "[b]ased on the timing of the events and the basis for [Corporal] Bailey's suspicions of [Mr.] Bustillos being linked to his filming."

---

[15] There is no dispute Mr. Bustillos had a First Amendment right to film the Refinery.

29

Aplt. App. at 189. "[Corporal] Bailey arrested [Mr.] Bustillos for concealing identification," the district court reasoned, "but a jury could determine, after considering the facts in Plaintiff's favor, that [Corporal] Bailey asked for [Mr.] Bustillos' identification because he was filming the refinery." Aplt. App. at 189. The district court also rejected Defendants' alternative argument that Mr. Bustillos could not satisfy this third requirement because Corporal Bailey had reasonable suspicion to demand Mr. Bustillos's identification. Aplt. App. at 190.

On appeal, Corporal Bailey argues: (1) the district court should have concluded he had reasonable suspicion to demand Mr. Bustillos's identification, which would have "ma[de] it impossible for any retaliatory motive to be the 'but-for' cause of that action"; or (2) alternatively, Mr. Bustillos did not point to any evidence of a retaliatory motive on Corporal Bailey's part. Opening Br. at 40–41. We reject both arguments.

The first argument rises and falls with our earlier reasonable suspicion analysis. As we have explained, the district court correctly concluded Corporal Bailey lacked reasonable suspicion of a predicate, underlying crime.

The second argument falls outside our limited interlocutory jurisdiction. As discussed, the district court concluded a reasonable jury could find "Bailey asked for [Mr.] Bustillos' identification because he was

filming the refinery." Aplt. App. at 189. Corporal Bailey seems to acknowledge motive is generally a question of fact. Opening Br. at 41 ("The District Court found a factual issue here from the 'timing of the events and the basis for [Corporal] Bailey's [suspicions] of [Mr.] Bustillos being linked to his filming.' The District Court offered no logical or legal basis for this finding."). We have no jurisdiction to consider this challenge in our interlocutory posture. *Buck*, 549 F.3d at 1292 (finding no jurisdiction to review district court's finding that a fact dispute existed as to whether defendant's actions were motivated by plaintiff's First Amendment activity); *see also Johnson*, 515 U.S. at 316 (reasoning "intent" is a "factual controvers[y]" rather than a "purely legal matter[]" suited for resolution by interlocutory appeal). We reject Corporal Bailey's attempts to cast his factual arguments as contentions of legal error.

We affirm the district court's denial of summary judgment on Mr. Bustillos's First Amendment claim.

### III

Defendants also assert the district court erred by denying summary judgment on Mr. Bustillos's state-law claims. Opening Br. at 42–43. Mr. Bustillos contends we should decline to exercise jurisdiction over this portion of Defendants' appeal. Answer Br. at 21. We agree with Mr. Bustillos.

31

Generally, our interlocutory jurisdiction extends only to the district court's denial of qualified immunity, "and thus [we] may reach defendants' state law arguments only by exercising pendent appellate jurisdiction." *Fogarty*, 523 F.3d at 1154 (quoting *Swint* v. *Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). "It is appropriate to exercise pendent appellate jurisdiction only where resolution of the appealable issue necessarily resolves the nonappealable issue, or where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one." *Berrey* v. *Asarco, Inc.*, 439 F.3d 636, 647 (10th Cir. 2006). Pendent appellate jurisdiction is discretionary, and it is "generally disfavored" in "cases in which primary appellate jurisdiction is based on the denial of qualified immunity." *Cummings* v. *Dean*, 913 F.3d 1227, 1235 (10th Cir. 2019). The party seeking pendent jurisdiction has the burden to "support [an] assertion that we may exercise [it]." *Id.*; *see also Raley* v. *Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."). Defendants failed to meet their burden here.

Defendants did not discuss pendent appellate jurisdiction in their Opening Brief. *State Farm Fire & Cas. Co.* v. *Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) ("[A]ppellant failed to raise this issue in his opening brief

32

and, hence, has waived the point."). But even considering the points advanced only in the Reply Brief, we are not persuaded. First, Defendants argue that because the district court exercised pendent jurisdiction over Mr. Bustillos's state court claims, so should we. This argument misses the mark, as it conflates jurisdiction to hear the state law claims *at all* and our appellate jurisdiction over this interlocutory appeal.

Defendants' second argument fares no better. They contend "pendent jurisdiction over the state law claims" is appropriate because the claims "turn on the same issues of law upon which [the] federal claims turn." Reply Br. at 19. Defendants have generally identified the correct standard but have failed to show how it applies here. As we have explained, by "providing us with bare assertions rather than analytical guidance," an appellant "effectively ask[s] us to 'make arguments for [them] that [they] did not make in [their appellate] briefs,' which we 'will not' do." *Cummings*, 913 F.3d at 1236 (quoting *Cox* v. *Glanz*, 800 F.3d 1231, 1256 (10th Cir. 2019)).

Because Defendants have failed to meet their burden to support pendent appellate jurisdiction, we decline their invitation to exercise it.

## IV

We **DISMISS** the portion of Defendants' appeal relating to Mr. Bustillos's state-law claims. The district court's order denying summary judgment is otherwise **AFFIRMED**.

33

*Albert Bustillos v. The City of Artesia and Officer David Bailey*,
No. 22-2046, **BACHARACH**, J., concurring in part and dissenting in part.

This appeal involves qualified immunity for an arrest. The immunity is triggered if the arresting officer had probable cause to believe that the suspect concealed his identity. But probable cause required reasonable suspicion of some other crime.

Here the suspicion includes the crime of trespass. This suspicion grew out of a report to police dispatch, stating that someone was walking along a private entity's property and filming that property. In my view, an officer could reasonably suspect trespass based on the combination of information from dispatch and the appearance of the property itself.[1]

## I.     Mr. Albert Bustillos was reportedly filming private property.

Mr. Albert Bustillos was filming as he walked along a private refinery. A security officer for the refinery grew suspicious and called 9-1-1. The police dispatch told officers that

- a male individual was outside the fence and filming in toward the refinery and

- this individual was walking and filming employees' vehicles.

A police officer arrived, spotted the man, and asked for his identification. He refused, saying that he was on public property and had

---

[1]     The defendant also argues that reasonable suspicion existed for disorderly conduct, terrorist activity, loitering, and prowling. I agree with the majority's discussion of reasonable suspicion as to these crimes.

not committed a crime. Officer David Bailey then arrived and asked the man for his name. When he refused to answer, he was arrested and identified as Mr. Bustillos.

Mr. Bustillos sued Officer Bailey under 42 U.S.C. § 1983 for violating the First and Fourth Amendments.[2] Officer Bailey moved for summary judgment, asserting qualified immunity. The district court denied the motion, and Officer Bailey appealed.

## II.   Officer Bailey is entitled to qualified immunity on Mr. Bustillos's Fourth Amendment claim.

For his Fourth Amendment claim, Mr. Bustillos alleges that Officer Bailey lacked probable cause for the arrest. Officer Bailey counters by asserting qualified immunity.

### A.   Mr. Bustillos must prove the violation of a clearly established right.

Once a defendant asserts qualified immunity, "the plaintiff must establish (1) the defendant violated a statutory or constitutional right and (2) that right was clearly established at the time of the defendant's unlawful conduct." *Corona v. Aguilar*, 959 F.3d 1278, 1282 (10th Cir. 2020).

---

[2]    Mr. Bustillos also asserted state-law claims, which the district court dismissed. The majority upholds these dismissals, and I agree with the majority's discussion of these claims.

### B.    Probable cause turns on reasonable suspicion of trespass.

A warrantless arrest doesn't violate the Fourth Amendment if probable cause exists. *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015). So we consider the existence of probable cause based on the suspected crime.

Officer Bailey arrested Mr. Bustillos for concealing his identity. In New Mexico, concealment of identity can constitute a crime when individuals refuse to identify themselves in order to hinder an investigation. N.M. Stat. Ann. § 30-22-3. But to arrest individuals for concealing their identities, the officer needs "reasonable suspicion of some predicate, underlying crime." *Mocek*, 813 F.3d at 922 (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)). So we must consider whether Officer Bailey had reasonable suspicion of some *other* crime.

When determining whether reasonable suspicion blossomed into probable cause, we view the evidence in the light most favorable to Mr. Bustillos. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1205 (10th Cir. 2008). In viewing the evidence favorably to Mr. Bustillos, we consider two steps. First, Officer Bailey needed "reasonable suspicion [of trespass] to stop [Mr. Bustillos] and request his identity." *Mocek*, 813 F.3d at 922. Second, Officer Bailey needed probable cause to believe that Mr. Bustillos had concealed his identity. *Id.* at 922–23. Both steps involve

3

objective inquiries, where Officer Bailey's "state of mind (except for the facts that he knows) is irrelevant." *Keylon*, 535 F.3d at 1219 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

### C.    Reasonable suspicion existed for trespass.

The district court denied summary judgment, concluding that factual disputes precluded a finding that Officer Bailey had reasonably suspected a trespass. In reaching this conclusion, the district court identified three facts that a jury could find:

1.    Mr. Bustillos had stayed on public property.

2.    No signs had marked the walking path as private property.

3.    No one had reported a trespass.

Appellants' App'x at 184–85. In addition, Mr. Bustillos asserts a fourth fact: that the area between the fence and the concrete barricade was an "obvious" walking path for pedestrians. Appellee's Resp. Br. at 16. The issue for us is whether these four facts would demonstrate the violation of a clearly established constitutional right. *See Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012). I would answer *no* because a reasonable police officer could have suspected Mr. Bustillos of trespassing.

The reasonableness of this suspicion is a legal question that we review based on the facts that the district court identified. *Id.* Answering that legal question here involves two steps:

4

1.    Could a reasonable officer believe that the property between the fence and concrete barricade was privately owned?

2.    Could a reasonable officer believe that Mr. Bustillos had entered that area?

The answer is *yes* to both questions.

**1.    A reasonable officer could have believed that the pertinent area was privately owned.**

New Mexico defines *trespass* as "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." N.M. Stat. Ann. § 30-14-1(B). A reasonable officer would have applied this definition of *trespass* to the information known, which consisted of the report from dispatch and the appearance of the scene.

The refinery was surrounded by a fence. Between the refinery's fence and the road was a concrete barricade. Although the area between the fence and barricade was actually public property, Officer Bailey believed that this area was privately owned.

Though Officer Bailey was mistaken, he would enjoy qualified immunity if his mistake had been reasonable. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141–42 (10th Cir. 2014) (concluding that qualified immunity protects against liability for a reasonable mistake of fact). And Mr. Bustillos bore the burden of showing that Officer Bailey's mistake had been unreasonable. *See Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir.

2010) (stating that the plaintiff bears the burden of overcoming a defendant's claim of qualified immunity based on a reasonable mistake of fact).

To determine whether Mr. Bustillos had satisfied this burden, we must consider what Officer Bailey would have seen. He would have seen an open space between the fence and the concrete barricade:



Appellants' App'x at 146 (aerial view); *id.* at 57 (Mr. Bustillos's livestream, at 11:24). This concrete barricade could have suggested a boundary between the perimeter of the refinery and public property. Although that wasn't the case here, an officer could have reasonably regarded the concrete barricade as a boundary between the refinery and public property. So the district court's universe of facts didn't satisfy Mr. Bustillos's burden to show that Officer Bailey's mistake had been unreasonable.

Mr. Bustillos asserts that this area was a clear pedestrian right of way. But Mr. Bustillos does not explain or support this assertion. *See*

6

Appellee's Resp. Br. at 16 (stating that "the space between the fence line and concrete barriers is an obvious pedestrian right of way"). Despite the lack of explanation or support, the majority agrees with Mr. Bustillos, reasoning that the area appears suitable for pedestrians. Maj. Op. at 15–16 n.9. But the majority doesn't explain why the availability of a path for pedestrians would undermine an officer's assumption that the area was privately owned.[3]

Even if conflicting inferences were possible, a reasonable officer could assume that the path belonged to the owner of the refinery. *See, e.g.*, p. 6, above (photograph from Mr. Bustillos's livestream). Surely an officer wouldn't need to check property records before concluding that a private entity owned the area inside the concrete barricade. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (concluding that officers had probable cause to arrest the plaintiff for trespass without checking official records); *Bodzin v. City of Dallas*, 768 F.2d 722, 724–25 (5th Cir. 1985) (concluding that officers had probable cause to arrest the plaintiff for trespass even though the plaintiff had been on a public right-of-way because probable cause didn't require the officers to check property lines); *see also Saldana*

---

[3]    The majority points to the district court's factual finding about the suitability for pedestrian traffic, concluding that this finding undermines Officer Bailey's reason to regard the area as private. Maj. Op. at 15–16 n.9. But Mr. Bustillos doesn't make this argument; he instead argues only that a "pedestrian right of way" existed. Appellee's Resp. Br. at 16.

7

*v. Garza*, 684 F.2d 1159, 1164–65 (5th Cir. 1982).[4] So Mr. Bustillos hasn't

satisfied his burden to overcome Officer Bailey's reliance on a reasonable

mistake of fact as to ownership of the area inside the concrete barricade.[5]

**2.    A reasonable officer could have believed that Mr. Bustillos had entered the area thought to be private.**

Officer Bailey could also have reasonably believed that Mr. Bustillos

had walked between the fence and the concrete barricade.

The dispatcher had told Officer Bailey that someone was spotted

walking outside the fence.[6] Between the fence and the concrete barricade

was a walking path:

---

[4]    The *Garza* court concluded that a police officer enjoyed qualified immunity for his mistaken belief that the plaintiff was standing outside his own property. 684 F.2d 1159, 1163–65 (5th Cir. 1982). Even if the plaintiff had stayed on his property, qualified immunity would prevent liability for the police officer's mistake: "Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds . . . ." *Id.* at 1165.

[5]    Mr. Bustillos also points out that there were "no signs" warning against trespassing. Appellee's Resp. Br. at 17. But the absence of signage does not require a reasonable officer to scuttle evidence suggesting that the area was privately owned.

[6]    The dispatcher told Officer Bailey:

1.    "[T]he call was 'in reference to a suspicious person' at the Navajo refinery, that the reporting party was a security guard who was standing by, and that the guard reported the male subject was standing outside of the fence but filming in

8



Appellants' App'x at 57 (Mr. Bustillos's livestream, at 11:11). Given the information that Mr. Bustillos was outside the fence and walking, a police officer could reasonably assume that Mr. Bustillos had used this walking path while filming the refinery.

In fact, Mr. Bustillos didn't deny walking between the fence and the concrete barricade. He instead insisted that he

- had stayed on public property and

- had known the boundaries of the refinery.

After insisting that he had stayed on public property, Mr. Bustillos said that he didn't need to provide identification "just for . . . walking on the

---

towards the refinery yard." Appellants' App'x at 174 (quoting Defendants' Statement of Undisputed Facts ¶ 11).

2.    "The dispatcher then relayed to Bailey the suspect's description and that the subject was on foot and that the guard reported that he was also filming employee's vehicles." Appellants' App'x at 174 (citing Defendants' Statement of Undisputed Facts ¶¶ 12–13).

9

sidewalk." Appellants' App'x at 176. Officer Bailey could reasonably assume that Mr. Bustillos was referring to the area between the fence and the concrete barricade.

Granted, it's possible that Mr. Bustillos had stayed outside the concrete barricade, for there was also an area there for someone to walk. But a "determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

Mr. Bustillos argues that

- no one accused him of trespass and

- there was no information that he walked between the concrete barricade and the fence.

Appellee's Resp. Br. at 16–17. But even if "it is more likely than not that [Mr. Bustillos was] not involved in any illegality," Officer Bailey's suspicion could still have been reasonable. *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (quoting *United States v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009)). Indeed, the required likelihood of criminal activity "falls considerably short of satisfying a preponderance of the evidence standard." *Mocek v. City of Albuquerque*, 813 F.3d 912, 923 (10th Cir. 2015) (quoting *Arvizu*, 534 U.S. at 274). We ask only whether the facts "warranted an officer of reasonable caution in believing the

action taken was appropriate." *Id.* (quoting *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009)).

Officer Bailey could see the walking path inside the concrete barricade and had been told that Mr. Bustillos was

- outside the fence,

- filming in toward the refinery, and

- walking.

And Mr. Bustillos admitted that he had "walk[ed] on the sidewalk." Appellants' App'x at 176. Given the totality of circumstances, Officer Bailey could reasonably suspect that Mr. Bustillos had walked on the path between the fence and the concrete barricade.

A similar issue arose in *Grice v. McVeigh*, 873 F.3d 162 (2d Cir. 2017). There the court had to decide whether a police officer had a reasonable basis to suspect that someone had trespassed on train tracks. The police officer had been told that someone was "by the train tracks crossing." *Id.* at 165. When the police officer arrived, he saw the plaintiff standing "approximately 12–15 feet from the tracks, next to a barricade." *Id.* Even though the police officer never saw the plaintiff on the tracks, he was nearby and was photographing the trains. *Id.* at 165–66. This information sufficed for reasonable suspicion of trespass. *Id.* at 167.

*Grice* is persuasive and equally applicable here. Like the plaintiff in *Grice*, Mr. Bustillos was near private property and was recording what was

11

taking place on that property. The plaintiff's proximity to that property was enough for reasonable suspicion in *Grice*, and the same is true here.

**3.      The location of the arrest wouldn't undermine the reasonableness of suspicion.**

The majority contends that the location of the eventual arrest undermines the reasonableness of Officer Bailey's suspicion. For this contention, the majority cites the livestream footage, stating that Officer Bailey encountered Mr. Bustillos "nowhere near" the area considered to be private. Maj. Op. at 15 (citing Appellants' App'x at 57 (Mr. Bustillos's livestream, at 16:15–24:00)). Mr. Bustillos doesn't make this argument. But even if we were to consider where the confrontation took place, the location could have suggested private ownership.

Officer Bailey confronted Mr. Bustillos right in front of the refinery's sign. *See* Appellants' App'x at 57 (Mr. Bustillos's livestream, at 20:32). This is how the corner looked[7]:

---

[7]    This image was obtained from Google Maps based on Mr. Bustillos's livestream footage. *See* Appellants' App'x at 57 (Mr. Bustillos's livestream, at 20:32); *see also Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (taking judicial notice of an image from Google Maps).



The proximity to a private entity's sign, only feet away from the entity's parking lot, could suggest that Mr. Bustillos was standing on private property when he was approached by Officer Bailey. So the location of the arrest could reasonably reinforce Officer Bailey's suspicion of trespass.

### 4.     A reasonable officer could believe that the owner of the refinery hadn't consented to Mr. Bustillos's entry.

Officer Bailey also had reason to believe that the owner of the refinery hadn't consented to Mr. Bustillos's entry onto the property. The New Mexico Supreme Court held that when land is unposted, "the knowledge element may [] be established through a sufficient quantity of direct or circumstantial evidence." *State v. Merhege*, 394 P.3d 955, 958 (N.M. 2017). For example, the New Mexico Supreme Court concluded that "jurors could have reasonably determined that [a three-foot high] wall communicated to members of the public that they did not have permission to enter the front yard . . . by any route other than the path to the front door." *Id.* at 958–59.

13

Officer Bailey could reasonably draw a similar inference from the concrete barricade surrounding the refinery. This barricade suggested that the owner of the refinery was limiting entry to designated places. Officer Bailey saw not only the concrete barricade but also refinery employees waiting for the police. And Officer Bailey knew that a security guard for the refinery had reported Mr. Bustillos to dispatch. Together, this information created reasonable suspicion that the owner of the refinery hadn't consented to Mr. Bustillos's presence inside the concrete barricade.

D.    **Probable cause existed when Mr. Bustillos refused to identify himself.**

Officer Bailey also needed probable cause that Mr. Bustillos had concealed his identity. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 924 (10th Cir. 2015). Probable cause exists when the "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* at 925 (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)).

New Mexico law makes it a crime to "conceal[] one's true name or identity . . . with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty." N.M. Stat. Ann. § 30-22-3. To

14

arrest a suspect for this crime, an officer needs reasonable suspicion of a predicate crime. *Mocek*, 813 F.3d at 922. Reasonable suspicion existed for trespass, and Mr. Bustillos declined to identify himself. So Officer Bailey had probable cause to believe that Mr. Bustillos had committed the crime of concealing his identity.

With probable cause, Officer Bailey did not violate the Fourth Amendment by arresting Mr. Bustillos. So Officer Bailey is entitled to qualified immunity on the Fourth Amendment claim.

### III. The district court erred in denying summary judgment to Officer Bailey on the First Amendment claim.

Mr. Bustillos also asserted a First Amendment claim for retaliation based on the exercise of a protected right (refusing to identify himself). Officer Bailey moved for summary judgment on this claim, and the district court denied his motion. I would reverse this ruling.

To prevail on this claim, Mr. Bustillos needed to show "(1) that []he was engaged in a constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [his] exercise of [his] First Amendment speech rights." *A.M. v. Holmes*, 830 F.3d 1123, 1162 (10th Cir. 2016) (quoting *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007)). Relief is generally available "[i]f an official takes

15

adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Liability exists only if the retaliatory motive caused the injury. *Id.* So "[t]he plaintiff . . . must . . . prove the absence of probable cause for the arrest." *Id.* at 1724; *see also Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (concluding that the plaintiff's "retaliatory-arrest claim must fail" when the "Deputy [] had probable cause to arrest [the plaintiff]"); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1149 (10th Cir. 2020) ("[W]here the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause.").

Officer Bailey had probable cause to arrest Mr. Bustillos. *See* Part II(D), above. And "a retaliatory arrest claim fails" when the arresting officer had probable cause. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).[8] So the district court erred in denying Officer Bailey's motion for summary judgment on the First Amendment claim.

---

[8]    The Supreme Court explained that "[a]lthough probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). So "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence

16

## IV.   Conclusion

I would reverse the denial of summary judgment on the claims involving the First and Fourth Amendments.

On the claim involving the Fourth Amendment, Officer Bailey had (1) reasonable suspicion that Mr. Bustillos had committed trespass and (2) probable cause that Mr. Bustillos had concealed his identity. Because probable cause existed, Officer Bailey didn't violate the Fourth Amendment by arresting Mr. Bustillos. So the district court should have granted summary judgment to Officer Bailey on the Fourth Amendment claim.

The existence of probable cause also dooms Mr. Bustillos's claim under the First Amendment. So the district court should also have granted Officer Bailey's motion for summary judgment on this claim.

---

that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. But Mr. Bustillos has not made this showing.